486 P.2d 1042

**AMERICAN STATES INSURANCE COMPANY, WESTERN PACIFIC DIVISION, Plaintiff and Appellant,**

v.

**Marvin J. WALKER et al., Defendants and Respondents.**

**Robert W. CLUBB, Plaintiff,**

v.

**Dixie Ann WALKER, Defendant.**

**No. 12320.**

Supreme Court of Utah.

July 7, 1971.

---

2. Section 25-5-1, U.C.A.1953.

3. Utah Mercur Gold Min. Co. v. Herschel Gold Min. Co., 103 Utah 249, 134 P.2d 1094.

D. Gary Christian, of Kipp & Christian, Salt Lake City, for plaintiff-appellant.

William S. Richards, of Richards & Richards, Salt Lake City, for Walkers.

Lee W. Hobbs, Salt Lake City, for Clubb.

ELLETT, Justice:

Dixie Ann Walker was involved in an automobile-motorcycle collision and was sued by Robert W. Clubb, the rider of the motorcycle. She claims to be covered by a policy of insurance written by American States Insurance Company wherein her father, Marvin J. Walker, is the named insured.

The insurance company denied coverage to Dixie Ann on the ground that she was not an insured under her father's policy. She retained her own attorney and settled the case on a stipulated judgment in favor of Mr. Clubb. A garnishment was issued by Clubb, who traversed the answer of the insurance company. Upon trial thereof, the lower court held the insurance company to be indebted to Dixie Ann Walker and gave judgment against it for the use and benefit of Mr. Clubb.

Subsequent to the service of the writ of garnishment, the insurance company filed a declaratory judgment action seeking to have a determination of whether it is liable to Dixie Ann and Clubb under the policy. The trial court held that Dixie Ann was an insured under the policy and awarded her an attorney's fee for defending the declaratory judgment action.

The two cases were consolidated on this appeal.

There are two matters for our determination:

1. Was Dixie Ann Walker a resident of her father's household at the time of the collision? and

2. Is she entitled to an attorney's fee for defending the declaratory judgment action?

The policy in question contained the following provisions:

The following are insureds under Part 1:

\* \* \* \* \* \*

(b) with respect to a non-owned automobile, (1) the named insured, (2) any relative, but only with respect to a private passenger automobile or trailer,

\* \* \* \* \* \*

"relative" means a relative of the named insured who is a resident of the same household.

Dixie Ann went away to college during the school years 1965–66 and 1966–67, where she was studying to go into the field of education. She considered herself a resident of her father's household all during this time and returned to his home in Idaho Falls, Idaho, at the end of each school year. After two years of college study, she decided to become an X-ray technician and came here to Salt Lake City, Utah, to receive her training in a local hospital. She lived at the hospital for approximately four months until she had to move to make room for some student nurses, and thereafter she lived in an apartment with some other girls. She opened a joint bank account here with her father and had a telephone listed in her own name. She was born July 23, 1947, and was just under 21 years of age on May 30, 1968, the date when the accident in question happened. While in training as an X-ray technician

she was paid a salary of approximately $140 per month take-home pay. Her parents augmented her income by giving her small amounts of money, clothing, and food when she would return home on visits. At all times prior to the date of the accident she kept some furniture, her books, and her clothing in her father's home. She considered herself a resident of Idaho and voted in the general election there in November 1968. She had a driver's license issued by the State of Idaho but none by Utah. As opposed to the foregoing, the insurance company points out that when she filed her 1968 income tax return, she listed her residence for the year as being in Utah.

With this evidence before him, the trial court held on May 30, 1968, Dixie Ann Walker was a resident of her father's household. It is our duty to affirm him if there is any substantial evidence to sustain that ruling.[1]

■ A resident of a household is one who is a member of a family who live under the same roof. Residence emphasizes membership in a group rather than an attachment to a building. It is a matter of intention and choice rather than one of geography.

Ordinarily when a child is away from home attending school, he remains a member of the family household, and the question of when he ceases to be such is one which must be determined from all of the facts and circumstances as revealed by the evidence.

■ The trial court heard the evidence and made a finding that at the time of the collision Dixie Ann Walker was still a resident of her father's household. Whether we would have made the same ruling had we tried the case is immaterial, and on appeal we are not justified in substituting our judgment for his, since the evidence was such as to sustain his judgment.

The ruling made is further buttressed by the testimony to the effect that Dixie Ann and her father went to the agent of the insurance company for advice as to whether an additional insurance policy should be taken out to cover her when she left Idaho for training in Utah. The agent told them that she would be covered by her father's policy. The inquiry was made because the father's policy contained this provision:

### YOUR AGENT

Information regarding your insurance policy or additional coverage may be obtained from your agent whose name is noted in this policy.

■ Before an award of attorney's fee could be made in the declaratory judg-

---

1. Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176 (1961).

ment action, it must appear that the insurance company acted in bad faith or fraudulently or was stubbornly litigious.[2] Under our practice an attorney's fee is not allowed in the ordinary lawsuit unless it is provided for by statute or by contract. By its policy the insurance company promised to pay all sums which the insured became legally obligated to pay as a result of bodily injury sustained by any person. By failing to defend the action against Dixie Ann Walker, it caused her to sustain legal expenses which resulted because of the collision. It does not dispute its liability for this fee. It does question the award in the declaratory judgment action. The Walkers and Mr. Clubb contend that the company acted in bad faith and was stubbornly litigious in bringing and maintaining this action. The record shows that the writ of garnishment was served on the insurance company June 30, 1970, and the next day the declaratory judgment action was commenced. The company could have answered the writ and appealed from any adverse judgment rendered against it and could have raised all points which it asserted in the action it filed. We can see no reason for the bringing of this new action except to compel the defendants therein to secure counsel in order to avoid a default judgment. The trial court without making a specific finding to that effect apparently thought the company was acting in bad faith and was stubbornly litigious, since he made an award of an attorney's fee in the matter. We think he acted within his prerogative in doing so.

The judgment is affirmed, with costs on appeal awarded to the respondents.

CALLISTER, C. J., and TUCKETT and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.

---

2. Maryland Casualty Co. v. Sammons, 63 Ga.App. 323, 11 S.E.2d 89 (1940).