Robert H. CRIST, M.D., Provo Canyon School, Inc., and D. Eugene Thorne, Ph.D., Plaintiffs,

v.

INSURANCE COMPANY OF NORTH AMERICA; The Standard Fire Insurance Company; and American Home Assurance Company, Defendants.

Civ. No. C–79–0655.

United States District Court, D. Utah, C. D.

Jan. 14, 1982.

Harold G. Christensen, Max D. Wheeler, Paul C. Droz of Snow, Christensen & Martineau, Salt Lake City, Utah, for plaintiffs.

Ray R. Christensen of Christensen, Jensen & Powell, Salt Lake City, Utah, for defendant INA.

F. Robert Bayle, Salt Lake City, Utah, for defendant American Home.

P. Keith Nelson, Robert L. Stevens of Richards, Brandt, Miller & Nelson, Salt Lake City, Utah, for defendant Standard Fire.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This case is before the court on plaintiffs' motion for summary judgment and further relief, argued before the court on August 27, 1981, seeking various costs and attorneys fees incurred in defending an underlying action in which the defendants had a duty to defend. Following the hearing, the court took the matter under advisement and has since reviewed the memoranda and affidavits provided by counsel and the various authorities cited. Based on the foregoing, the court renders the following decision.

The plaintiffs here were defendants in a prior action, *Milonas v. Crist*, No. C–78–0352 (D.Utah). That action sought declaratory and both temporary and permanent injunctive relief under 42 U.S.C. § 1983, relating to policies and practices established and utilized at the Provo Canyon School by the plaintiffs in this action, and also sought actual and punitive damages.

The original *Milonas* complaint was filed September 21, 1978, and the defendants, plaintiffs Dr. Crist and the Provo Canyon School in this action, were represented by counsel from the outset. Defendant Insurance Company of North America (INA) was notified of the suit in mid-September, 1978, and received suit papers in November. INA on February 9, 1979, denied coverage under a "School-College Policy" and refused to defend. Defendant Standard Fire Insurance Company (Standard) received notice of a claim, under its professional malpractice policy issued to plaintiff Dr. Crist, on March 19, 1979, and denied coverage on April 20, 1979.

On September 14, 1979, the *Milonas* plaintiffs amended their complaint and named Dr. Thorne as a defendant for the first time. Dr. Thorne's defense was tendered to American Home Assurance Company (American Home) on December 17, 1979, pursuant to its professional liability policy. American Home consulted with counsel for the *Milonas* defendants and reserved their rights under the policy by letters dated March 18, 1980 and April 3, 1980, as trial was scheduled to begin on March 24, 1980.

At the close of the evidence presented at trial, the court dismissed all damage claims against Dr. Thorne and the claims against Dr. Crist alleging improper administration of medications. The jury found no cause of action on the remaining damages claims. Judge Jenkins, however, granted a permanent injunction against several practices employed at the school, and awarded $133,-546.54 as costs including attorneys' fees to the plaintiffs, as prevailing parties on the injunctive aspect of the case only.

The entire *Milonas* case was "doggedly litigated" every inch of the way. Appeals were made from the trial court's entry of a preliminary injunction, a myriad of motions were filed, and the permanent injunction is presently pending on appeal before the Tenth Circuit Court of Appeals.

The present action, seeking a declaratory judgment that the insurers owed a duty to defend, was filed on November 5, 1979. By order of the court dated September 11, 1980, plaintiffs' motion for summary judgment was granted, declaring that defendants INA and Standard owed a duty to defend plaintiffs Robert H. Crist and Provo Canyon School, Inc., and Robert H. Crist, under their respective insurance policies in the *Milonas* action. Plaintiffs then supplemented their complaint by adding Dr. Thorne as plaintiff and American Home as defendant, and raised the present motion for summary judgment against American Home. This motion was resolved at oral argument when American Home advised the court that it would accept liability pursuant to its reservation of rights for the reasonable attorneys' fees and costs incurred by Thorne in the prior action.

There remains then, plaintiffs' motion for further relief in which they seek recovery of various costs and attorneys' fees for which they allege defendants are liable, relating to this action, the prior action, and the appeals of the prior action. The court will address these several items of recovery separately to determine the relief, if any, that can be awarded as a matter of law at this time.

## I. COSTS AND ATTORNEYS FEES IN THE *MILONAS* LAWSUIT

The bulk of recovery sought in this action relates to the costs and attorneys fees expended in defending the *Milonas* action. Counsel for the various parties have raised several issues to be resolved here as to these fees.

### A. *Recoverability of Attorneys Fees Incurred Before Tender*

Defendants argue that, as a matter of law, they are not liable for any litigation expenses incurred prior to tender of defense to them. This claim arises from the general rule that no breach of a duty to defend occurs until the insured tenders the defense and the insurer in some way fails to accept that duty. *See* 7C J. Appleman, *Insurance Law and Practice*, § 4691 at 264 (Berdal ed. 1979). The insurer's duty to defend corresponds to the insured's duty to relinquish control of the defense, and one cannot arise without the other.

Plaintiffs counter that because the defendants refused to defend, they cannot now be heard to complain that tender was untimely, and argue that the failure to award these expenses constitutes a windfall for the defendants. The responsibility of promptly notifying their respective insurers and tendering to them their defense of the action, however, rested with the insureds. Any windfall would on the contrary result from requiring the defendants to bear the burden of the defense prior to their knowledge of the action.

While there would appear to be a question of fact as to the exact amount of expenses incurred prior to tender to each insurer, the court will rule as a matter of law that those expenses cannot be recovered in this action.

**B.** *Liability for Expenses Relating to Non-Covered Claims*

In the *Milonas* action, the plaintiffs sought several forms of relief that were clearly not covered by the insurance policies. Plaintiffs here seek to recover all expenses relating to the defense of that action, regardless of whether the expenses related to covered claims or non-covered claims.

By its previous order of summary judgment, the court determined that the defendants had a duty to defend in the *Milonas* case. That clearly applies, under the terms of the policies, to the damages claims and not to claims seeking an injunctive form of relief. Had the defendants accepted tender of the defense, they would not have been obliged to defend the extensive injunctive aspects of the action, if they could be clearly differentiated from the covered claims, but merely to resolve the potential conflicts of interest in a manner satisfactory to all concerned.

■ There are innumerable cases, however, that have required an insurer who breached his duty to defend to pay the entire defense costs, regardless of whether all of the claims were covered by the particular policy. *E.g., Tampa Electric Co. v. Stone & Webster Engineering Corp.,* 367

F.Supp. 27, 31 (M.D.Fla.1973); *Hogan v. Midland Nat'l Insurance Co.,* 3 Cal.3d 553, 476 P.2d 825, 91 Cal.Rptr. 153, (1973); *Home Insurance Co. v. Pinsky Bros., Inc.,* 160 Mont. 219, 500 P.2d 945 (1972); *National Steel Construction Co. v. National Union Fire Insurance Co.,* 14 Wash.App. 573, 543 P.2d 642, 644 (1975). These cases state the general rule and recognize, as does this court, that the duty to defend is more broad than the duty to indemnify. These cases were fully considered and distinguished in *Insurance Company of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir. 1980), *cert. denied,* —— U.S. ——, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981), however, and this court must examine that reasoning here.

In *Forty-Eight Insulations*, the insured had been uninsured for a portion of the time period for which liability was established under an exposure theory. While accepting a pro rata share of the liability, the insured argued, based on the above authorities, that its insurers were responsible for the entire costs of defending the underlying action. The Sixth Circuit rejected this argument based on what it viewed as the underlying rationale of those decisions: "An insurer must bear the entire costs of defense when 'there is no reasonable means of prorating the costs of defense between the covered and not-covered items.'" *Id.* at 1224 (quoting *National Steel Construction Co. v. National Union Fire Insurance Co.,* 543 P.2d at 644).

■ A precedent question thus arises as to whether the costs and attorneys fees incurred in defending the *Milonas* suit can be readily apportioned between covered and non-covered claims. Following *Forty-Eight Insulations* and the general rule, an insurer is clearly liable for all expenses if they cannot be apportioned. At least one court has, in dicta, cast the burden of demonstrating any possible apportionment on the insurer, not the insured. In *Hogan v. Midland National Insurance Company,* the court reasoned:

In its pragmatic aspect, any precise allocation of expenses in this context would be extremely difficult and, if ever feasible, could be made only if the insurer produces undeniable evidence of the allocability of specific expenses; the insurer having breached its contract to defend should be charged with a heavy burden of proof of even partial freedom from liability for harm to the insured which ostensibly flowed from the breach.

476 P.2d at 831.

This court is of the opinion that the expenses incurred in the *Milonas* action can possibly be more easily apportioned than they can be in the majority of cases where covered and non-covered claims are alleged. Typically, non-covered claims are those seeking distinct elements of damage not covered by the policy, but arising from identical conduct. Or they might arise out of gross or willful conduct not covered by the policy, where it remains for the jury to characterize the insured's conduct as negligent, representing covered conduct, or willful, which may not be covered. Clearly an apportionment of expenses in these instances is nearly impossible. The *Forty-Eight Insulations* case represented, on the other hand, a case where prorating of expenses was crystal clear, because of the exposure theory of liability employed there.

■ This case may ultimately fall somewhere in between the above examples. Some aspects of the *Milonas* case may have related solely to injunctive relief. Other aspects appear from the memoranda of counsel to be possibly non-apportionable. The effect of Judge Jenkins' apportionment of costs awardable in the *Milonas* case is also unclear at this point. The court therefore must reserve an all-encompassing judgment regarding the question of which of these expenses may be apportioned pending further evidence in this case. In doing so, the court accepts the rationale of *Forty-Eight Insulations*, while recognizing that that case was dealing with much clearer facts combined with a unique theory of liability. The court must emphasize the contractual nature of a duty to defend,

however, in determining the scope of that duty. The insurers here should be allowed an opportunity to demonstrate that an apportionment can be made, but must bear a heavy burden of proof on the issue. This portion of plaintiffs' motion is therefore denied.

## C. Reasonableness of Attorneys' Fees

Plaintiffs claim that, having breached their duty to defend, the insurers are liable for all attorneys fees expended, without regard to the reasonableness of those fees. Alternatively, they argue that the court can take judicial notice of the reasonableness of the fees incurred and rule at the present time as a matter of law. The court must reject both of these arguments, notwithstanding the several affidavits and exhibits filed.

■ Attorneys' fees are an item of damage arising out of a breach of the insurance contract. As such, they must be proved and established and their reasonableness shown just like any other element of damage. This does not mean the fees must be the least expensive available, *see Ripepi v. American Insurance Companies*, 349 F.2d 300 (3d Cir. 1965), but they must be reasonable under the circumstances. Cases which seem to indicate that an insurer waives its right to challenge the reasonableness of the fee by refusing to defend, like *Siegel v. William E. Bookhultz & Sons, Inc.*, 419 F.2d 720 (D.C.Cir.1969) are extraordinary and distinguishable on their facts. *See Lujan v. Gonzales*, 84 N.M. 229, 501 P.2d 673, 682–83, *cert. denied sub nom., Gonzales v. Allstate Insurance Company*, 84 N.M. 219, 501 P.2d 663 (1972).

Plaintiffs rely also on *Blank v. Talley Industries*, 390 F.Supp. 1 (S.D.N.Y.1975) for the proposition that this court, "presumed to be knowledgeable as to fees generally charged" and "the reasonable time . . . required to perform services," may take judicial notice of the reasonableness of the fees incurred here. In *Blank*, the court made specific reference to the need for an evidentiary hearing regarding fees, *id.* at 3 and note 3, and only referred to its "presumed

knowledge" in resolving a dispute over the lack of proper records of an Austrian law firm. *Id.* at 4. Indeed, the New Mexico Court of Appeals reversed a trial court which had fixed the amount of attorneys' fees awarded an insured without allowing the insurer an evidentiary hearing. *See Lujan v. Gonzales*, 501 P.2d at 683.

Despite the prospects of complicating this lawsuit further, it is clear that the reasonableness of the attorneys fees claimed is a question of fact resolveable only after an evidentiary hearing where the several factors relating to reasonableness may be considered.

### D. *Court Costs Awarded in Milonas*

An additional issue has been raised regarding whether the plaintiffs here can recover from their insurers the costs, including attorneys fees, awarded by the *Milonas* court to the plaintiffs in that action as prevailing parties. The basis for such a recovery is language in each insurance policy to the substantial effect that "[t]he company will pay ... all costs taxed against the insured in any suit defended by the company." These provisions are representative of the general principle of insurance law that a duty to pay costs attaches with the duty to defend, as a corollary of the right to control the defense. The problem occurs in analyzing the clear language of the policies in light of the unique facts in this case. In *Milonas*, the court costs were awarded solely for the injunctive aspects of the case and specifically segregated from the costs incurred in the damages portion, where the present plaintiffs were the prevailing party. As has been discussed in Part B, the insurers had no duty to defend the injunction claims where those claims could be distinguished from the damage claims.

Given the nature of the *Milonas* case, the costs awarded were not strictly "costs taxed in a suit defended," or costs that under the insurance policies, arose from a claim for which there was a duty to defend. Under the particular facts presented here, and without the guidance of a single case addressing even remotely similar facts, the court is constrained to rule that these costs are not recoverable from the insurers.

While this ruling admittedly appears to strain at the language of the policies, it is additionally supported by what the court views as an equitable result. A contrary ruling, while equally supportable under a strict reading of the policy language, could operate in no other way than to penalize severely the insurers for failing to accept their duty to defend in the *Milonas* suit. Such a penalty is nowhere contemplated by the insurance contracts. This portion of plaintiffs' motion is therefore denied.

### II. INSURERS' LIABILITY FOR APPEALS EXPENSES

Plaintiffs include in the expenses they seek to recover here the costs of prosecuting appeals of both the preliminary and permanent injunctions in *Milonas*. It is clear that a duty to defend encompasses, at least in certain circumstances, a duty to appeal an adverse judgment. The court need not here address whether this case contains such circumstances, for there was neither an adverse judgment on the damages claim, nor a duty to defend the injunction claims. Without such a duty under the insurance contracts, the insurers cannot be liable for the expenses of those appeals.

Plaintiffs argue that if not reversed, the *Milonas* finding of a deprivation of constitutional rights will be *res judicata* in a pending case seeking damages arising from the same conduct. Be that as it may, the simple fact remains that there was no duty to defend the injunction claims and therefore no duty to appeal. The insurers here are apprised of their potential liability for damages in further actions and it is their responsibility, and not this court's, to determine how best to proceed to minimize those risks. Plaintiffs' motion for these expenses is therefore denied.

### III. LIABILITY FOR FEES IN THIS ACTION

Plaintiffs' final claim is for attorneys' fees incurred in bringing this declaratory

judgment action against the insurers. There are innumerable cases dealing with this specific issue, and the courts have resolved the issue in practically every conceivable way. *See* Annotation, *Insured's Right to Recover Attorneys' Fees Incurred in Declaratory Judgment Action to Determine Existence of Coverage Under Liability Policy*, 87 A.L.R.3d 429 (1978). Because of the extensive disagreement, the court will address itself specifically to the Utah case law which governs this case.

The general rule of law followed by all American jurisdictions is that attorneys' fees are not recoverable in the typical lawsuit absent statutory or contractual provision. *E.g., American States Insurance Company v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971). Whether it be by exception to the general rule or in conformity thereto, it is also quite generally held that attorneys' fees are recoverable where the fees were incurred by an insured in a lawsuit his insurer was legally obligated to defend. While other jurisdictions have held that expenses incurred in a declaratory judgment action to establish coverage are or are not recoverable under these rules, or extensions of these rules, the Utah courts have followed the position that such fees are recoverable only where it appears that the insurer "acted in bad faith, or fraudulently or was stubbornly litigious." *Walker*, 486 P.2d at 1044.

While this view has been criticized, *see* 7C J. Appleman, *Insurance Law and Practice* § 4691, at 281–283 (Bernal ed. 1979), it is not without justification, and many courts, in addition to Utah, continue to adhere to it. *See, e.g., Fidelity & Casualty Company of New York v. Riley*, 380 F.2d 153 (5th Cir. 1967) (applying Georgia law); *New Hampshire Insurance Company v. Christy*, 200 N.W.2d 834 (Iowa 1972); *Nationwide Insurance Company v. Harvey*, 50 Ohio App.2d 361, 363 N.E.2d 596 (1976). A rationale has been stated by the Utah Supreme Court as follows: "It would not comport with our ideas of either law or justice to prevent any party who entertains bona fide questions about his legal obligations from seeking adjudication thereon in the courts." *Western Casualty & Surety Company v. Marchant*, 615 P.2d 423, 427 (Utah 1980) (citing Utah Const. art. I, § 11).

While the Utah Supreme Court has not had occasion to reiterate the specific *Walker* rule in recent years, it has adhered to this standard or a similar standard in analogous contexts. In *Espinoza v. Safeco Title Insurance Company*, 598 P.2d 346 (Utah 1979), the court noted that attorneys' fees were recoverable as damages in a tort action against the insurer where the insurer breached its duty of good faith and fair dealing, citing *Walker*. *Id.* at 349 n. 7. And in *Western Casualty*, the court expressed "no doubt" that the Utah Declaratory Judgment Act, Utah Code Ann. § 78–33–10, authorizing the award of "costs as may seem equitable and just," might include attorneys' fees if they were "incurred because of litigation which was not resorted to in good faith, but was merely spiteful, contentions or obstructive," again citing *Walker*. 615 P.2d at 427.

Having concluded, then, that the *Walker* test applies in this case, it remains to examine the facts of this case to determine whether the court may rule as a matter of law that the defendants' conduct meets this standard. The present record is clearly insufficient to make such a determination at this time. The good faith or lack thereof of the insurers is very much disputed by the parties, except as regards American Home, and the court cannot rule now as a matter of law. Therefore, this portion of plaintiffs' motion is denied.

Plaintiffs argue in addition that this court could award these fees as costs under the federal declaratory judgment statute. The court will not consider this possibility prior to hearing evidence in the case.

Accordingly,

IT IS ORDERED that plaintiffs' motion for further relief be denied, in accordance with this decision.