The **AETNA CASUALTY & SURETY COMPANY, the Automobile Insurance Company of Hartford, Connecticut, and the Standard Fire Insurance Company,**

v.

**F. Stewart DeBRUICKER and Lauren DeBruicker.**

Civ. A. No. 93–0391.

United States District Court,
E.D. Pennsylvania.

Nov. 18, 1993.

---

Jeffrey R. Dimmich, Snyder, Dimmich & Guldin, P.C., Allentown, PA, for plaintiffs.

David E. Prewitt, David E. Prewitt Associates, P.C., Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

In this declaratory judgment action I must decide whether the pivotal term, "resident," in an insurance policy from which coverage is sought for a college student injured in an automobile accident while traveling with her father from the family household in Pennsylvania to her college in California, is ambiguous as applied to her circumstances. I find that the term "resident" was ambiguous as applied to this college student and that the ambiguity must be resolved in favor of the insured.

## I. PROCEDURAL HISTORY

This declaratory judgment action is the offshoot of Lauren DeBruicker's lawsuit against her father, F. Stewart DeBruicker, for her injuries. *Lauren DeBruicker v. F. Stewart DeBruicker*, No. 92–CV–4315. That action was settled for $500,000, and was followed by this action by the insurer asking for a declaration that they had no further liability under any of the policies sold to Mr. DeBruicker. The plaintiff's summary judgment for a declaration of no further liability is now before me.

## II. FACTS

This action arises out of an automobile accident involving both declaratory defendants. Lauren DeBruicker was a passenger in a car driven by her father F. Stewart DeBruicker. The two were in Colorado, headed towards Palo Alto, California where Lauren DeBruicker was to resume her studies as a sophomore at Stanford University when the car rolled over. As a result of the accident Lauren DeBruicker was severely injured.

At the time of the accident Mr. DeBruicker had purchased, and was among the named insured on, three automobile liability policies with the plaintiffs, Aetna—a primary liability policy on the Chevrolet Nova, the car in which the accident occurred (Nova Policy); a primary multi-vehicle liability policy for three other cars (Multi–Vehicle Policy); and an excess policy which covered liability beyond that covered by the two primary policies (Excess Policy).

The chief dispute between the parties is whether the plaintiff is liable to the defendants under the Excess Policy. The Excess Policy covered the insured' liability for personal injury or property damage in excess of that covered by primary policies such as the Nova and Multi–Vehicle policies. Deposition of Lauren DeBruicker, July 22, 1993 (hereinafter L.D. Depos.), Exhibit 6, page 7. The insureds or covered persons are defined as "you (referring to Mr. DeBruicker) or a family member." *Id.,* Ex. 6, p. 5. "Family member" is defined, identically to the Nova and Multi–Vehicle policies, as "a person who is a resident of your household who is related to you by blood, marriage or adoption . . ." *Id.,* Ex. 6, p. 5. The limit of the Excess Policy is $1,000,000 per accident. *Id.,* Ex. 6, p. 1.

The fifteenth exclusion of the Excess Policy states that the policy does not cover "[a]ny personal injury to any person who is related by blood or marriage, or adoption to a covered person and who is a resident of the household of that person . . .". *Id.,* Ex. 6, p. 11. The plaintiff asserts that this exclusion applies to Lauren DeBruicker because she is a blood relative of the family and a resident of the household of the covered person—Mr. DeBruicker. The defendants contest the designation of Lauren DeBruicker as a resident, and therefore the application of the exclusion to her.

## III. DISCUSSION

█ This case is before me under diversity jurisdiction. Accordingly, I must apply the law of the state in which I sit. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In Pennsylvania, state courts apply the law of the state in which the insurance policy was delivered. *Travelers Indemnification Co. v. Fantozzi By and Through Fantozzi,* 825 F.Supp. 80, 84 (E.D.Pa.1993). In this case the policy was delivered in Pennsylvania so Pennsylvania law applies. In applying Pennsylvania law, my task is to determine what the Pennsylvania Supreme Court has decided or would decide if faced with the same case. *Prudential Property & Casualty Ins. Co. v. Pendleton,* 858 F.2d 930, 934 (3d Cir.1988).

█ Summary judgment is appropriate if there are no material disputed facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). While state substantive law controls the case, the determination of what are legal issues properly decided by the judge and factual issues which to be decided by the jury is controlled by federal law. *Byrd v. Blue Ridge Rural Electric Cooperative,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). In this circuit, the interpretation of insurance terms where the underlying facts are undisputed is purely a legal matter. *New Castle County v. Hartford Accident and Indemnity Co.,* 970 F.2d 1267, 1270 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1846, 123 L.Ed.2d 470 (1993). *Travelers Indemnification Co.,* 825 F.Supp. at 84. Accordingly, the issue presented on summary judgment is properly before me.

█ In Pennsylvania, as in almost all states, insurance contracts are interpreted so as to effect the intent of the parties. *Treasure Craft Jewelers v. Jefferson Insurance Co. of New York,* 583 F.2d 650, 652 (3d Cir.1978). The contract is read as a whole so as to give effect to all its terms. *Giancristoforo v. Mission Gas and Oil Products, Inc.,*

776 F.Supp. 1037, 1041 (E.D.Pa.1991). Where the contract is clear and unambiguous, the court must not torture the terms to find an ambiguity. *Northbrook Insurance Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir.1982). Clear and unambiguous language will be given effect even where there is no evidence that the insured read or understood the terms. *Federal Kemper Insurance Co. v. Jones*, 777 F.Supp. 405, 408 (M.D.Pa.1991). However, when the contract is ambiguous it must be construed in favor of the insured. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983).

■ In order to support a finding that there is an ambiguity, there must exist at least two reasonable interpretations of the contradicted term or clause. *K & Lee Corp. v. Scottsdale Ins. Co.*, 769 F.Supp. 870 (E.D.Pa.1991); *Allstate Ins. Co. v. Sprout*, 782 F.Supp. 999, 1007 (M.D.Pa.1991); *C. Raymond Davis & Sons, Inc. v. Liberty Mutual Ins. Co.*, 467 F.Supp. 17, 20 (D.C.Pa. 1979).

### A. The Excess Policy

Was Lauren DeBruicker a "Resident" of Her Parents' Household?

The DeBruickers seek recovery for $1,000,000, the liability limit under the excess policy. They assert that Exclusion 15 does not apply to Lauren DeBruicker because she is not a "resident of the household", or at least that the term is ambiguous regarding her status. The insurers argue that her circumstances designate her unambiguously as a resident.

Throughout both the primary and excess policies benefits and limitations hinge on the status of individuals as "family members" who are internally defined by the policies as "any person who is related by blood or marriage, or adoption to a covered person and who is a *resident* of the household of that person ...". L.D. Depos., Ex. 2, p. 2, Ex. 3, p. 2, Ex. 6, p. 6 (emphasis added). Those who fall under the definition of family member are entitled to coverage under the primary policies and the Excess Policy for all liability accrued in the Chevrolet Nova and other vehicles. However, the Excess Policy

precludes, through Exclusion 15, payment of judgments won by those who are labeled "family members". *Id.*, Ex. 6, p. 11. This preclusion does not exist under either primary policy.

Lauren DeBruicker clearly falls within the terms of the first phrase of the exclusion as she is related by blood to the policyholder, her father. Thus the determination of this Declaratory Judgment action turns on the definition of the phrase "resident of the household."

The material facts necessary to determine Lauren DeBruicker's residence are undisputed. She was enrolled as an undergraduate at Stanford University, about to start her sophomore year. L.D. Depos., p. 7–8. At Stanford, Lauren DeBruicker lived in a student dormitory during her freshman year, and intended to live in a different dormitory the following year. *Id.*, p. 24–25. Dormitory assignments were obtained through a lottery process. *Id.*

Lauren DeBruicker spent all her family vacations with her parents either at their house in Wynewood, Pennsylvania, at their vacation home, or with relatives. *Id.*, p. 18–23, 44–49, 55–56. The general policy for Stanford students was that they were not allowed to stay on campus when class was not in session. *Id.*, p. 68–69. Exceptions were allowed to this policy for students who needed to remain on campus. Lauren DeBruicker never asked to be exempted. *Id.* These vacations included a twelve week summer vacation which Lauren DeBruicker spent chiefly at her parents' vacation home in Massachusetts. *Id.*, p. 20–22. There Lauren DeBruicker held a summer job at which she earned approximately $2500 and saved approximately $1500. *Id.* p. 36–37.

Aside from her summer earnings Lauren DeBruicker was almost completely financially dependent on her parents. She had no personal credit, but did have an American Express Card on her father's account. *Id.* p. 39–41. The statement for that card was sent to Mr. DeBruicker. *Id.* She used the card for textbooks, personal items, clothing, etc. *Id.* Lauren DeBruicker's tuition, room and board were paid by her parents. *Id.*, p. 41

She did not take out a student loan. *Id.* Her parents also provided her with spending money. *Id.*, p. 41–42. Her parents paid for all travel expenses. *Id.*, p. 45–46. On their tax return, the parents declared Lauren De-Bruicker as a dependent. Deposition of F. Stewart DeBruicker, July 22, 1993, p. 24–25. She had independent medical insurance for which her parents paid the premium. *Id.*, p. 27–32.

, Lauren. DeBruicker left a number of personal items at her parents' house when she returned to school including childhood keepsakes, clothing, bedroom furniture, books and photos. L.D. Depos., p. 13–14. She was transporting a number of items back to the school in the Chevrolet Nova. *Id.*, p. 12–13. She left a bicycle, computer, furniture and clothing at Stanford. *Id.*, p. 11–13.

Lauren DeBruicker had a Pennsylvania driver's license and was registered to vote in Pennsylvania. *Id.*, p. 10, 30–31. She answered in her deposition that she intended before the accident to change both those registrations to California, but had taken no affirmative steps to change either. *Id.*, p. 31–32. She received mail in both California and Pennsylvania. *Id.* p. 27–29. She listed her parents' home as her address on her tax return. *Id.*, p. 35.

■ Defendants contend that Lauren De-Bruicker was not, a resident by virtue of her status as a full-time college student in California. The plaintiff insurance companies assert that examination of Lauren DeBruick-er's arrangement with her family—almost complete financial dependency, returns to her parents' home or vacation homes during breaks—and with her school—changing dormitory rooms—reveals her to be a resident of her parents' household.

Pennsylvania and federal courts in the Third Circuit have grappled with the issue of what is a "resident" for insurance contract purposes. However, no court has ruled directly on what the treatment of a college student should be. Accordingly, if I am to determine whether Lauren DeBruicker was a resident of her parents' household I must extrapolate a controlling principle from more general pronouncements regarding the term.

I am able to first delineate the meaning of "resident" by distinguishing it from what it is not—an equivalent of "domicile." *See Amica Mutual Insurance Company v. Donegal Mutual Insurance Company*, 376 Pa.Super. 109, 545 A.2d 343 (1988). In *Donegal,* the Pennsylvania Superior Court, in holding that an eighteen year old daughter of divorced parents who had lived with her mother for the years preceding an auto accident, but intended to soon move in with her father, was not a resident of her father's household, wrote:

> The Courts of this Commonwealth have historically recognized the classical definitions of the words domicile and residence. Domicile being that place where a man has his true, fixed and permanent home and principal establishment, and to which · whenever he is absent he has the intention of returning. Residence being a factual place of abode. Living in a particular place, requiring only physical presence.

*Id.* at 115. The court affirmatively expressed that the intent of the disputed "resident" had no relevance to its determination.

The Third Circuit has twice been asked to interpret contract terms similar, but not identical to, the term at issue in this case. In *National Mutual Insurance Company v. Budd–Baldwin,* 947 F.2d 1098 (3d Cir.1991), the Court ruled that the brother of an insured who made frequent weekend visits to the insured's house in order to visit his fiancee was not covered by the policy's inclusion of "[r]elatives living in your household." *Id.* at 1101. "Relative" was defined by the policy as "one who regularly lives in your household, related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household." *Id.*

In arriving at its holding, the Third Circuit panel made several observations about the contract language. It noted that the insurance company in the case had perhaps heeded the suggestion of the Superior Court of Pennsylvania in *Donegal,* that "insurers add 'words of refinement' if they intend the term 'residence' to mean something more than its common law definition." *Id.* at 1102. The Court focused on the qualifier "regularly lives":

A person lives where they "occupy a home". So, to "regularly live" somewhere means to occupy that particular home at fixed intervals. When we combine the dictionary definition with the facts of everyday life, it is clear that to occupy a home means to be able to call that place one's own, to claim it as a place where one' has a right to be. The word home itself connotes a place where one belongs and can always go with the certainty that he will be taken in. It connotes not only a physical place, i.e. the place where one eats meals, sleeps, socializes and generally spends time when not "otherwise engaged with the activities of life," but a sense of belonging ... Temporary visits, however frequent or regular, are simply insufficient to establish residency."

*Id.* (citations omitted).

In *St. Paul Fire and Marine Insurance Company v. Lewis,* 935 F.2d 1428 (3rd Cir. 1991), the Court of Appeals upheld a District Court determination on motion for directed verdict that the son of an insured who had an apartment in the same city as the insured was not "living with" the insured. In making this determination the court gave no weight to the fact that the son, who had graduated from college, was currently enrolled in school in the city taking undergraduate courses. *See id.* at 1438–39 (Garth, J. dissenting). The record indicated that the son lived in an apartment in the same city as his parents, frequently visited his parents for meals and holidays, listed his parents address on his drivers license and various other documents, and received sporadic financial support from his parents. *Id.* at 1430.

The court held that the phrase "living with" was not ambiguous "in the context of a parent and adult child", *id.* at 1432, holding that at a minimum, "the concept living with someone contemplates ... some personal contact with that person's home. Occasional, sporadic, and temporary contacts are insuffi-

cient." *Id.* at 1431–32. The court explicitly declined to consider whether these same terms might be ambiguous as applied to members of the military or full-time students. *Id.* at 1432–33.

In applying these broad pronouncements to Lauren DeBruicker's particular circumstances there are a myriad of factors which can be examined to establish her residence. Her financial dependence, spending of vacations at home, the place made for her at home by her parents, all recommend treating her as a resident. Her age (over 18) and her time spent in a location other than her parents' home suggest the alternative ruling.

If physical fact is the controlling factor, clearly Lauren DeBruicker's presence is more often in California than in Pennsylvania. While her years before college constitute a relatively seamless status as a resident of her parent's home, and her years after college, should she own or rent a home of her own, are most likely uncontestable as "non-resident" years, the years in college defy such simple designation. While the filial relationship in this case is clearly a substantial one, nothing about it elevates Lauren DeBruicker's location status to an uncontested one of "resident."

The two most intuitively powerful reasons for recognizing Lauren DeBruicker as a resident are her financial dependence and her vacation choices. The first cannot be independently controlling because it would make residents out of a panoply of young people who are supported in their starting out years[1] and older people who cannot pay their rent on fixed income. The second also cannot be substantially determinative. It elevates the physical location where less time is spent over that where more time is spent. It prejudices out-of-state students who must use vacations to visit their parents versus in-state students who can maintain a more per-

---

1. What status, for example, would the members of the "slacker" subculture around Austin, Texas, which inspired Richard Linkletter's movie of the same name, have under these policies. This collection of post-graduation age part-time students are often still in pursuit of undergraduate degrees, benefitting from low state school tuition, or merely lingering around the colleges towns where they attended school, getting by on odd jobs and sporadic support from parents. *See Slacker* (1991). Do these "college students" qualify as residents or not? If not, what factors differentiate them from Lauren DeBruicker?

manent living space and still see their parents frequently.

If these two factors do not independently control the status of resident then the sole remaining argument must be that in combination they do. This argument really devolves into an intuitive feeling that college students are still the wards of their parents. While this may often be true, and arguably is true for Lauren DeBruicker, it hardly is a presumption that can be so steadfastly adhered to as to eliminate ambiguity.

Indeed, acquiescing to the insurer's contention that financially dependent college students are residents of their parents' household requires reliance on anachronistic notions of college life. College students exist in a multitude of circumstances: out-of-state vs. in-state; living at home vs. living at the campus; part-time vs. full-time; liberal arts vs. occupational training; graduate vs. undergraduate; self-sufficient vs. financially dependent vs. taking out student loans; frequent visitors to their parents vs. less frequent vs. estranged.

This is not to say that Lauren DeBruicker's circumstances run closer to the nonresident end of the continuum of college students. However, the very malleability of the concept of a college student means that many insureds will be without notice of how college students will be treated under such a policy, and can not be obligated to guess where on the continuum of "residence" their particular student lies. Nor is there extrinsic evidence that Aetna explained to the DeBruicker's what Lauren DeBruicker's status would be.

The term "resident" for college students has been interpreted both ways by courts, and its ambiguity has been recognized. *See e.g. State Farm Mutual Automobile Insurance Company v. Hanna*, 277 Ala 32, 166 So.2d 872 (1964); *Crossett v. St. Louis Fire and Marine Insurance Co.*, 289 Ala. 598, 269 So.2d 869 (1972). The fact that courts differ on the meaning of a particular term in a particular context is evidence that the term is indeed ambiguous. *Cohen v. Erie Indemnification Co.*, 288 Pa.Super. 445, 432 A.2d 596 (1981). In addition, in most cases insurers have argued for a narrow definition of "resident" in order to avoid liability coverage of college students. *See e.g. Crossett v. St. Louis Fire and Marine Ins. Co.; American States Ins. Co., Western Pacific Division v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971). That insurance companies's have argued the opposite interpretation from what Aetna argues here suggests that Aetna should have been on notice as to the term's ambiguity. *Cf. Hayes v. Home Life Ins. Co.*, 168 F.2d 152, 154–55 (D.C.Cir.1948) ("If the companies were permitted to write clear clauses of liability at one point and obscure negations of liability at another, and to maintain successfully the prevalence of the latter over the former, the temptation to sell one clause and defend on the other would be dangerous.")

The conclusion that the term "resident" is ambiguous as applied to Lauren DeBruicker is supported by statements of courts applying Pennsylvania law. In *Budd–Baldwin*, the Third Circuit observed that modifying words like "regularly lives with" helped rid the otherwise largely legalistic term "resident" of some of its ambiguity. Similarly, the pivotal term employed in *Lewis* was "living with." While no set of words can be stripped of all ambiguity, the insured is better able to apply her circumstances to common parlance such as "living with" than to legal terms such as "resident" and "domiciliary." *Cf. Nationwide Mutual Insurance Co. v. U.S. Fidelity and Guaranty Co.*, 529 F.Supp. 194, 197 (D.C.Pa.1981) ("Under Pennsylvania law, a provision of insurance contract is ambiguous if reasonably intelligent individuals on considering it in context of entire policy would honestly differ as to its meaning and if alternative or more precise language, if used, would have put meaning of language beyond reasonable construction.") In *Budd–Baldwin*, the contract also contained the clarifying modifier that "[a] relative may live temporarily outside your household." 947 F.2d at 1101.

That the term "resident" is ambiguous in the context of college students is evidenced by the Pennsylvania legislature's decision to specify college student in its No–Fault Act. In the No–Fault Act in effect in 1986, the legislature specified that in determining who is insured by virtue of being in "residence in

the same household with a named insured" ... an "individual is in residence in the same household if he usually makes his home in the same family unit, even though he temporarily lives elsewhere." *See Boswell v. South Carolina Insurance Company,* 353 Pa.Super. 108, 509 A.2d 358, 361 (1986). The Pennsylvania Superior Court interpreting this clause incorporated a comment of a national organization asserting that the last phrase regarding temporary absence from a household applied to college students. *Id.* at 362. This specific delineation of college students suggests to me that the Pennsylvania legislature drafting insurance provisions considered "resident" an ambiguous term as applied to college students without further explanations.

In holding that insurance companies must find a different way to address the circumstance of college students in order to avoid ambiguity, I am not unmindful of the concerns of insurance companies which cannot address in a form contract an inexhaustible laundry list of household figures. I have catalogued in this opinion the myriad sorts of college students, all of who cannot be specified in a form contract.

However, insurance companies have already been put on notice by courts in this state and in this circuit that ambiguity can be removed by using terms of more plain meaning than "residence," such as "living with," or by using qualifying phrases such as the Pennsylvania legislature did with its No–Fault law. A contract interpreted by one federal court simply added the phrase "includes your unmarried and unemancipated child away at school" to qualify the term "lives with you." *Crump v. State Farm Mutual Automobile Ins. Co.,* 961 F.2d 725, 726 (8th Cir.1992); *see also State Farm Mutual Ins. Co. v. Taussig,* 227 Ill.App.3d 913, 169 Ill.Dec. 845, 847, 592 N.E.2d 332, 334 (1992).

Furthermore, insurance companies might be best served by having insureds list all members of their household that they expect to be covered by a policy much as they are asked to list drivers of insured automobiles. Much confusion could be alleviated by having both insurer and insured address individually persons who are most likely to be at issue in a given policy. *Cf. American States Ins. Co., Western Pacific Division v. Walker,* 26 Utah 2d 161, 486 P.2d 1042, 1044 (1971).

Accordingly, as the rule in this state is that ambiguous terms in insurance contracts will be construed in favor of the insured, *Standard Venetian Blind Co.,* 469 A.2d at 566, I find in favor of the insured and the motion is denied as to the liability portion of the excess policy.

The DeBruickers also contend that Exclusion 15 is ambiguous because it contradicts the underinsurance coverage of the excess policy, and therefore should be read completely out of the policy, thus giving effect to both liability and underinsurance coverage. The exclusion prohibits coverage for "family members" for personal injury. The underinsurance provision in the contract provides coverage for those same "family members" for "bodily injury." L.D. Depos., Ex. 6, p. 8. The DeBruickers argue that the two clauses read in tandem extend and then eliminate coverage. Because I have already found the exclusion ambiguous in regards to liability coverage I need not address the asserted contradiction in that context. The defendants also argue that the contradiction between Exclusion 15 and the underinsurance provision of the Excess Policy should be resolved by giving effect to the underinsurance coverage up to the $25,000 limit on the policy. I would be receptive to this argument if, in the absence of the exclusion, the coverage was triggered. However, the underinsurance coverage in the Excess Policy is governed by the "same terms and conditions" as the underinsurance provisions of the two primary policies. L.D. Depos., Ex. 6, p. 8. That reference incorporates the "family car exclusion" in the Nova Policy which provides that underinsurance coverage will not be extended to injuries involving underinsured vehicles "[o]wned by or furnished or available for the regular use of you or any family member." *Id.,* Ex. 2, p. 5. Since that exclusion applies to the accident in this case the underinsurance coverage is not triggered. Accordingly, it is unnecessary for me to address the apparent contradiction between the underinsurance coverage and the exclusion.

### B. Multi–Vehicle Policy

The insured contend they are entitled to the $500,000 policy limit under the Multi–Vehicle Policy for under-insurance coverage. The insurer asserts that liability coverage is precluded because the policy contains the same "family car" exclusion for underinsurance coverage as the Excess Policy. L.D. Depos., Ex. 3, p. 15. The insureds assert that the "family car" exclusion as applied to underinsurance coverage is void as violative of public policy. Other courts have visited this issue in the identical circumstance of claims for liability and underinsurance coverage against two insurance policies purchased by the same insured, and have found that exclusions against receiving dual coverage are valid. *Linder by Linder v. State Farm Mutual Insurance Co.,* 364 N.W.2d 481 (Minn.App., 1985); *Marroquin v. Mutual Benefit Insurance Company,* 404 Pa.Super. 444, 591 A.2d 290, 297–98 (1991). To rule otherwise would allow insureds to convert inexpensive underinsurance coverage into liability coverage without paying the extra premium that greater liability coverage requires. *Id.*

## IV. CONCLUSION

I find that the plaintiff insurance companies are liable under the liability provision of the Excess Policy and have no further liability to the DeBruickers otherwise under any of the policies.

AND NOW, this 18th day of November, 1993, IT IS ORDERED as follows:

1. Plaintiff's motion for summary judgment for no further liability under the Excess Policy's liability coverage is DENIED.

2. Plaintiff's motion for summary judgment for no further liability under the Multi–Vehicle Policy and under the Excess Policy's underinsurance coverage is GRANTED.

3. Summary judgment is GRANTED in favor of the defendant on the issue of liability under the Excess Policy.