742 A.2d 138 (1999)
326 N.J. Super. 499
Bartholomew R. D'ASCOLI, Plaintiff-Respondent,
v.
Carolyn STIEH, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 16, 1999.
Decided December 10, 1999.
*139 John T. Stieh and Matthew D. Blumberg, Milford, PA, for defendant-appellant (Mr. Stieh, on the brief).
Ferrara Rizzo & Bauer, for plaintiff respondent (Daniel L. French, on the brief).
Before Judges PRESSLER, LANDAU and CIANCIA.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Bartholomew R. D'Ascoli, a Sussex County physician, brought this action against defendant Carolyn Stieh to recover his fee for medical services he rendered to her. The trial judge denied defendant's motion for summary judgment and granted plaintiff's cross-motion, entering judgment in his favor in the amount of $2,589.32. Defendant appeals, and we affirm, agreeing that New Jersey law applies to the enforcement of this medical service agreement.
The relevant facts are not in dispute. Defendant is a Pennsylvania resident employed by a Pennsylvania employer, who on November 12, 1995, injured her ankle at her Pennsylvania work site during the course of her employment. There is no question that her workers' compensation claim is governed by Pennsylvania's workers' compensation law. There is also no question that a component of Pennsylvania's workers' compensation law is 77 Pa. Stat. § 531(7), which bars a medical provider from seeking to hold the employee liable for all or any portion of the medical costs incurred in treating a compensable injury, the provider's exclusive payment remedy being against the insurer. 77 Pa.Stat. § 531(7) (1999). New Jersey's workers' compensation law contains no such prohibition. It is thus clear that had defendant obtained medical treatment for her ankle injury in Pennsylvania, she would have been immune to a claim for a medical fee. Nevertheless, and for reasons that do not appear in the record, she sought out plaintiff's services on November 16, 1995, four days after the accident. Plaintiff, as we have noted, practices in Sussex County, New Jersey, and is a licensed physician of this State. Plaintiff, insofar as the record indicates, determined upon examination that defendant required arthroscopic surgery of her ankle, which he eventually performed successfully in this State. She returned to work the following April.
On defendant's first visit to plaintiff, she was given a patient information form which she completed, providing the requested personal information. She had also made clear that her injury was compensable and provided the name and address of her employer and insurance carrier and her claim number. Just above the signature line on the form was the advisory, in capital letters, that the patient was directly responsible for payment of the fee irrespective of insurance coverage, it being the patient's responsibility, not the physician's, to deal with the insurance company. Prior to the actual performance of the surgery in January 1995, defendant signed another document in which the surgical fee was estimated at $3,500 and the additional anesthesia charge estimated at between $500 and $1,000. The record suggests that plaintiff thereafter did submit a claim to defendant's compensation carrier and was apparently paid some portion of his fee by it. It appears that the amount sued for represents the difference between the total fee and the carrier's partial payment. Since defendant thereafter refused to honor plaintiff's demand for the balance due, he instituted this action.
Defendant's defense may be simply stated. She argues that because the injury for which plaintiff treated her was a
*140 compensable injury under Pennsylvania's workers' compensation law, the immunization afforded her by that law from personal responsibility for payment of treatment costs renders her agreement with plaintiff unenforceable. In other words, she contends that New Jersey must afford extraterritoriality to Pennsylvania's workers' compensation law. We regard that theory, which rests upon wholly inapposite predicates, as clearly untenable.
To begin with, defendant assumes that the issue is one of choice of law between the workers' compensation laws of New Jersey and those of Pennsylvania. That is clearly not so. We agree that if the issue before us had implicated the question of whether New Jersey's or Pennsylvania's workers' compensation law governed the legal consequences of a particular compensable accident with which each state has some relevant nexus, then such a conflicts-of-law issue would arise. Compare, e.g., Eger v. E.I. DuPont DeNemours Co., 110 N.J. 133, 539 A.2d 1213 (1988); Wilson v. Faull, 27 N.J. 105, 141 A.2d 768 (1958). But the action before us is not a workers' compensation action and does not implicate any direct issue involving the extent of a worker's remedy under workers' compensation laws or the extent of their exclusivity. The action before us is a simple contract action to enforce a contract entirely legal and enforceable where made. Thus New Jersey's workers' compensation laws are inapposite and do not require comparison with Pennsylvania's.
As we view the matter, the relevant choice of law issue is which state's law governs the interpretation and enforcement of the contract defendant made with plaintiff by which she agreed to pay for his medical services. If Pennsylvania law controls, then clearly the contract, which is in direct violation of statutory provision, would be unenforceable. If New Jersey law controls, there would be no impediment to enforcement. We are persuaded that under modern conflict of laws analysis, requiring identification of the state with the most significant relationship to the parties and the transaction, there can be little doubt as to New Jersey's paramount interest. The agreement was made in this State. The medical services were both anticipated to be and were actually performed in this State by a practitioner practicing in and licensed by this State. Under these circumstances, the one disparate element, namely defendant's out-of-state residence, is inconsequential to the analysis. See, e.g., State Farm, etc., Ins. Co. v. Simmons' Estate, 84 N.J. 28, 34-35, 417 A.2d 488 (1980); Caribe Hilton Hotel v. Toland, 63 N.J. 301, 303, 307 A.2d 85 (1973); Restatement (Second) of Conflict of Laws, § 188 (1971).
As we understand the essence of defendant's argument, she is urging what is, in effect, a public policy defense to the enforcement of this New Jersey contract. That is to say, plaintiff apparently contends that the public policy of Pennsylvania, expressed by its statutory immunization of employees from direct action by providers of medical treatment for compensable injuries, provides a defense to a contract for medical services both legal in New Jersey and enforceable under its law. We reject that contention.
We recognize that violation of public policy may be a thoroughly effective defense to enforcement of a contract otherwise legal. See, e.g., Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 607 A.2d 142 (1992) (enforcement denied to contract interfering with client's freedom to choose legal representation); Accountemps v. Birch Tree Group, 115 N.J. 614, 560 A.2d 663 (1989) (enforcement denied to contract providing for commission to unlicenced employment agency); Vasquez v. Glassboro Service Ass'n, Inc., 83 N.J. 86, 415 A.2d 1156 (1980) (enforcement denied to contract permitting self-help dispossession of migrant workers). These cases are, of course, illustrative of the Court's refusal to enforce contracts violative of this State's public policy. We also recognize that a contract made in this State will be denied enforcement here if it violates federal public policy. See, e.g., Cooper Medical
*141 Center v. Boyd, 179 N.J.Super. 53, 430 A.2d 261 (App.Div.1981) (medical indigent may not be sued for hospital bills where hospital failed to comply with its Hill-Burton obligations). And we are also aware that this State may withhold enforcement of a contract that is legal in the jurisdiction where made, but whose enforcement in New Jersey would seriously offend this State's public policy. See, e.g., Caribe Hilton Hotel v. Toland, supra, 63 N.J. 301, 307 A.2d 85 (recognizing the authority of the Court to refuse to enforce a gaming contract legal in Puerto Rico where made because of its offense to New Jersey's anti-gaming public policy, but nevertheless concluding that a gaming contract is not so offensive to New Jersey public policy as to warrant unenforceability here). We have not, however, found any reported decision in which our courts have withheld enforcement of a valid contract made and performed in this State and with which it has the primary nexus simply because it violates another state's public policy. Nor have we found expression of any such rule of law elsewhere. To the contrary the proposition that another state's public policy is persuasive if contrary to one's own has been expressly rejected. See In re Marriage of Chapman, 297 Ill.App.3d 611, 231 Ill.Dec. 811, 697 N.E.2d 365, 369 (1998); State Farm Mutual Automobile Insurance Company v. Collins, 258 Ill.App.3d 1, 196 Ill.Dec. 217, 629 N.E.2d 762, 764, appeal denied, 156 Ill.2d 567, 202 Ill.Dec. 932, 638 N.E.2d 1126 (1994).
There are other good reasons in common sense as well as equity supporting our determination. A New Jersey licensed physician who renders medical services in this State should be able to rely on the contract laws of this State in seeking payment. It is also arguable that by deciding to have her treatment outside of Pennsylvania, defendant waived the benefit of this aspect of the Pennsylvania workers' compensation law. We are satisfied that the reasonable expectations of both parties in respect of the rendering of medical treatment here were or should have been consistent with defendant's agreement to pay for the medical services rendered by plaintiff.
We have considered defendant's remaining objections to the grant of summary judgment to plaintiff and conclude that none of them has sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
The summary judgment appealed from is affirmed.