851 A.2d 75 (2004)
370 N.J. Super. 260
Mohamed HEBELA, Plaintiff-Respondent,
v.
HEALTHCARE INSURANCE COMPANY, Defendant-Appellant, and
The Hospital Center at Orange, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 2004.
Decided June 28, 2004.
*78 Thomas J. Pyle, Newark, Jr. argued the cause for defendant-appellant (Post, Polak, Goodsell, MacNeill & Strauchler, attorneys; Jay Scott MacNeill, of counsel; Mr. Pyle on the brief).
Bruce P. McMoran argued the cause for plaintiff-respondent (McMoran & O'Connor, attorneys; Mr. McMoran and Michael F. O'Connor, on the brief).
Before Judges SKILLMAN, WELLS and C.S. FISHER. *76
*77 The opinion of the court was delivered by FISHER, J.A.D.
In this insurance coverage dispute, we are required to determine whether there exists a public policy which precludes an insurer from providing coverage to one insured when sued by another insured, and to explore the manner in which a court should apportion counsel fees when they have been incurred by an insured both in defending a covered claim and in prosecuting his own uncovered claim.

I
Plaintiff Mohamed Hebela filed a complaint against defendant Hospital Center at Orange (the hospital) alleging he was terminated, in April 1997, in violation of both the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8, and the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. The hospital filed a counterclaim on March 2, 1998, alleging that plaintiff breached his "duties of competence, diligence, responsibility, good faith and loyalty," and was otherwise negligent in the performance of his duties as the hospital's chief financial officer. When Healthcare Insurance Company (Healthcare) failed to provide a defense to this counterclaim, plaintiff obtained leave to file an amended complaint seeking a determination that Healthcare was so obligated and an award of consequential damages.
On November 2, 2001, the trial judge granted plaintiff's motion for summary judgment and dismissed the counterclaim, holding, in part:
If there were a viable cause of action in law to recover from an employee for negligence it certainly could not stand on equitable grounds in this case. Any negligence preceded [the hospital's] positive treatment of [plaintiff] including but not limited to the offer made and *79 accepted by [plaintiff] to stay rather than accept the new position.
No appeal was filed with regard to this order.
On January 25, 2002, the trial judge found that Healthcare owed plaintiff a duty to defend against the hospital's counterclaim. Later, plaintiff sought $154,061.50 in counsel fees in defending the counterclaim.[1] In a written opinion dated August 21, 2002, the judge stated that she could not determine what part of those fees may have also related to plaintiff's affirmative claims and awarded the entire amount to plaintiff. We affirm the finding that the policy required Healthcare to provide a defense to the counterclaim, but reverse the judge's award of damages.

II
Healthcare issued a directors' and officers' liability insurance policy to the hospital for the period between January 1, 1998 and January 1, 1999. The insuring clause obligated Healthcare to "pay on behalf of an `insured person' `loss' because of any `claim' made against an `insured person' for a `wrongful act' during the `policy period.'" The policy defined a "wrongful act" as "any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty ... by an `insured person.'" The term "insured person" is defined as including any "past, present or future director, officer or trustee" of the hospital, "who was such at the time the act" complained of was committed. The policy also excluded claims "made against any director, officer or trustee by any other director, officer or trustee whether directly or derivatively."
Because the parties' arguments turn on the meaning of the policy's provisions and whether there is a public policy which limits their scope, the trial judge rightfully decided the coverage dispute by way of summary judgment. See Nat'l Union Fire Ins. Co. v. Transp. Ins. Co., 336 N.J.Super. 437, 443, 765 A.2d 240 (App. Div.2001). Healthcare does not dispute that the matter was ripe for summary judgment but instead argues that the judge's decision was erroneous as a matter of law. We disagree.
The general approach requires that an insurer defend an insured when "the complaint states a claim constituting a risk insured against." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992) (quoting Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954)). In most instances, the obligation to defend is fixed when a complaint is filed against the insured since, as a general matter, the duty to defend is ascertained by comparing the allegations in the complaint with the language of the policy. When "the two correspond, the duty to defend arises, irrespective of the claim's actual merit," Voorhees, supra, 128 N.J. at 173, 607 A.2d 1255, even if the claim is "groundless, false or fraudulent," Danek, supra, 28 N.J.Super. at 76-77, 100 A.2d 198. A later determination that the claim against the insured is without merit, as here, is irrelevant. "Liability of the insured to the plaintiff is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy." Voorhees, supra, 128 N.J. at 174, 607 A.2d 1255; see also Rosario v. Haywood, 351 N.J.Super. 521, 534, 799 A.2d 32 (App.Div. 2002). Accordingly, an insured need only show that the claim falls within the policy's *80 coverage to demonstrate the insurer's duty to defend.
We are satisfied that the language of the policy's insuring clause, quoted above, more than amply encompasses the counterclaim asserted against plaintiff and that the policy does not exclude a claim brought against a director or officer by the corporation, as here, although it does exclude claims brought against a director or officer by another director or officer. In concluding that the counterclaim falls within the insuring clause, we observe that plaintiff was an officer of the hospital when the alleged "wrongful acts" occurred, the hospital alleged it sustained a "loss," the counterclaim constituted a "legal proceeding," which was instituted against an "insured," and, thus, constituted a "claim" covered by the policy. Indeed, Healthcare does not appear to argue to the contrary. Instead of quarreling with the literal scope of its policy, Healthcare claims that an extrinsic public policy precludes coverage in this instance.
When an insurance policy is clear and unambiguous, as here,
[T]he court is bound to enforce the policy as it is written. It is not the function of the court to make a better contract for the parties than they themselves have seen fit to enter into or to alter it for the benefit of one party and to the detriment of the other.
[Royal Ins. Co. v. Rutgers Cas. Ins. Co., 271 N.J.Super. 409, 416, 638 A.2d 924 (App.Div.1994).]
Since we cannot locate and Healthcare has not cited any relevant ambiguity in the policy, we conclude that the application of its terms required the finding, adopted by the trial judge, that Healthcare was obligated to defend against the counterclaim.
It is true, however, that our courts will decline to enforce an insurance policy, like any other contract, if its enforcement would be contrary to public policy. See D'Ascoli v. Stieh, 326 N.J.Super. 499, 503, 742 A.2d 138 (App.Div.1999). In this case, Healthcare argues that a finding in favor of plaintiff would result in the triggering of coverage on behalf of one insured in a claim brought against another insured. While this is true, Healthcare has not alluded to a New Jersey public policy violated by such a result.
Instead, Healthcare relies upon two decisions of other jurisdictions, Lomes v. Hartford Fin. Serv. Group, Inc., 88 Cal. App. 127, 105 Cal.Rptr.2d 471 (2001) and Farr v. Farm Bureau Ins. Co. of Nebraska, 61 F.3d 677 (8th Cir.1995). The court in Lomes suggested that the question of coverage turns on important policy concerns in the following way:
General liability insurance is intended to protect an insured corporation (and its officers and directors) against corporate liability to third parties, not to provide coverage for suits between directors or officers.... The question of whether a director can claim status as an insured under a corporation's policy after initiating litigation against that corporation raises important issues of public policy not directly addressed by the California courts in a published opinion.
[105 Cal.Rptr.2d at 475 (citations omitted).]
Healthcare argues that, for public policy reasons, Lomes precludes a corporate director from obtaining a defense through a general comprehensive liability policy insuring a corporation, and its directors and officers, when an action is brought by the corporation or its directors and officers. In fact, however, Lomes did nothing more than determine that the insurance policy did not cover the claim in question.
*81 In Lomes, the claim asserted against the director revealed that he was not acting in his capacity as a director with regard to the claims asserted against him. That is, the counterclaim alleged that Lomes, after leaving the corporation and, thus, while acting in his individual capacity and not as a director, telephoned the corporation's lender and made defamatory statements which caused the corporation to lose its financing. Id. at 472. Since the policy insured directors "but only with respect to their duties as ... officers or directors," id. at 474, the court concluded that Lomes did not fit the policy's definition of "insured." Therefore, instead of ascertaining and applying some public policy which would preclude coverage, Lomes actually stands only for the proposition that a policy should be construed in accordance with its terms.
The Farr decision also interpreted policy provisions instead of ascertaining and applying a public policy restriction. The policy in Farr, like Lomes, required that the director's actions had to be on behalf of the corporation to trigger coverage:
The policies are intended to cover injuries caused by corporate officers when these officers are properly carrying out their duties to the corporation and are designed to protect the officer who acts to advance the business interests of the corporation, not the officer who acts in a manner that is antagonistic toward the corporation's business interests.
[61 F.3d at 681.]
In Farr, the corporation and one group of shareholder/directors alleged in a counterclaim that a group of minority shareholders/directors had breached their fiduciary duties, misappropriated trade secrets, and engaged in other conduct claimed to be inconsistent with their duties as corporate directors. The court concluded that coverage was precluded because a proper interpretation of the allegations could not lead to a finding that the counterclaim defendants were "acting in the scope of [their] duties" as officers, directors or employees of the corporation. Ibid. The court also interpreted the intent of the policy as precluding coverage for "internal disputes among shareholders." Id. at 682.
Lomes and Farr stand for the proposition that a corporate director cannot obtain coverage for a claim brought by the corporation or other directors when the director is sued for actions outside the scope of his duties as a director when that is how the policy defines its scope. These decisions do not support Healthcare's contention that there is a public policy precluding coverage for a director or officer who is sued by his corporation for acts performed in the course of his duties.
We conclude that the proper approach to the circumstances in question was blazed in Barnett v. Fireman's Fund Ins. Co., 90 Cal.App.4th 500, 108 Cal. Rptr.2d 657 (2001). There, two corporations filed suit alleging that three officers and employees, among other things, made disparaging remarks about the corporations. Since the claim brought against the officers alleged that "[a]t all times relevant [they] were executive officers of [the corporation], acting with respect to their duties as [the corporation's] executive officers," and that they "were acting to advance the interests of [the corporation]," when engaging in the conduct alleged as injurious, the claims were found to be covered. Id. at 664. Thus, even though the officers were alleged to have disparaged or defamed the corporation, those statements were allegedly made "in their capacities as executive officers seeking to discharge their duties to assure that [the corporation] fulfilled its legal obligations." Id. at 665.
*82 In the case at hand, like Barnett, the hospital's counterclaim alleged, as Healthcare synopsizes in its brief, "that [the hospital] suffered damages as a result of [plaintiff's] negligent performance of his job duties between 1993 and his termination in 1997." This illustrates that the hospital claimed plaintiff was acting within the scope of his employment in taking the actions complained of, and, thus, the claims fell within the policy's definition of "wrongful act."
In summary, we discern from these authorities no public policy which would preclude coverage for one insured when the action against him was commenced by another insured covered by the same policy. The public policy which we must follow is that which instructs our courts to enforce an insurance policy "as written," and not seek "to make a better contract for either of the parties" than that which they chose to make for themselves. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960). Here, the trial judge correctly granted summary judgment in favor of plaintiff since the counterclaim set forth causes of action which, if sustained, would require Healthcare to indemnify plaintiff.

III
As a result of Healthcare's wrongful refusal to defend against the counterclaim, plaintiff sought monetary relief. Because the counterclaim was dismissed, plaintiff's only monetary loss arose from his expenditure of counsel fees. Without the benefit of a hearing and without attempting to separate the fees incurred in defense of the counterclaim from the fees incurred in prosecuting the complaint, the trial judge awarded counsel fees in the amount of $154,061.50. Healthcare has appealed, claiming the amount awarded was unreasonable.
In support of the award, plaintiff submitted his attorneys' statement of services rendered from June 1997 through June 2002. Although a few entries expressly referenced plaintiff's defense of the counterclaim, the great bulk of the entries provide no specification. This lack of specification undoubtedly prompted the trial judge's concerns, which we also share, about the accuracy of a determination as to the fees attributable to defending the counterclaim, as opposed to those attributable to the prosecution of the complaint.
In responding to the fact that the award sought, and rendered, constituted nearly half of the plaintiff's legal fee for the entire case, plaintiff's counsel asserted that the counterclaim required a "substantial amount of pretrial discovery" and that over half of the interrogatories and requests for production of documents related to the counterclaim. Plaintiff's counsel also attempted to estimate the extent to which overlapping work related to the counterclaim, as opposed to his own complaint, assigning percentages of overall work performed during certain time periods. In seeking to justify the considerable amount of services assigned to the defense of the counterclaim, plaintiff's counsel explained that "an extensive amount of time, labor and expertise [was required] due to the number of different factual claims raised in the counterclaim; the complexity of the issues; the vast number of documents produced in discovery, which exceeded 4,000; and the scorched earth litigation tactics" of the hospital.
Without a plenary hearing, the trial judge summarily concluded that plaintiff was entitled to the entire amount sought, holding:
I have probably spent more time than warranted to try to determine what [Healthcare's] legitimate issue is with *83 the bill other than they do not wish to pay it.... The only argument raised is that the work allegedly done in defense of the counterclaim overlapped with [plaintiff's] affirmative claims. While that may be so to an extent, or in theory, it is not entirely the case. Clearly thought process and strategy differs from the perspective of the affirmative claim as opposed to the defense of the counterclaim. Furthermore, had Healthcare retained counsel to represent [plaintiff,] counsel surely would have done this very same work.
As a result of these general observations, the trial judge concluded that the hourly rates were appropriate and the "work performed" was "reasonable and necessary." The full amount sought was awarded, as well as $9,168.36 incurred by plaintiff in seeking the award.
An insurer's duty to defend arises from the terms of the contract of insurance. See Hartford Acc. & Indem. Co. v. Aetna Life & Cas. Ins. Co., 98 N.J. 18, 22, 483 A.2d 402 (1984); Horesh v. State Farm Fire & Cas. Co., 265 N.J.Super. 32, 38, 625 A.2d 541 (App.Div.1993). When an insurer refuses to defend what is ultimately determined to be a covered claim, the insured is entitled to the damages proximately caused by that failure, namely, related counsel fees and expenses. See SL Indus., Inc. v. Am. Motorists Ins. Co., 128 N.J. 188, 215, 607 A.2d 1266 (1992); Grand Cove II Condo. Ass'n, Inc. v. Ginsberg, 291 N.J.Super. 58, 73-74, 676 A.2d 1123 (App.Div.1996); City Council of Elizabeth v. Fumero, 143 N.J.Super. 275, 289, 362 A.2d 1279 (Law Div.1976).
Difficulties arise, however, when the pleadings in a given case contain both covered and uncovered claims. In considering the extent to which an insurer is obligated to reimburse an insured who has been required, due to the insurer's default, to fund its own defense to covered claims, we start with the understanding that an insurer, by issuing a policy and accepting the required premium, agrees to pay the cost of defending a covered claim but not the cost of defending or prosecuting uncovered claims. See Grand Cove, supra, 291 N.J.Super. at 72, 676 A.2d 1123; Ins. Co. of N. Am. v. Forty-Eight Insulations, 633 F.2d 1212, 1224-25 (6th Cir. 1980), cert. denied, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). In cases containing a mix of covered and uncovered claims:
The general rule is that when the insurer has wrongfully refused to defend an action and is then required to reimburse the insured for its defense costs, its duty to reimburse is limited to allegations covered under the policy, provided that the defense costs can be apportioned between covered and non-covered claims. When the defense costs cannot be apportioned, the insurer must assume the cost of the defense for both covered and non-covered claims.
[SL Indus., supra, 128 N.J. at 214-15, 607 A.2d 1266 (citations omitted).]
In considering the practical application of this general rule, the Court in SL Industries essentially foreclosed the idea that there will be cases in which defense costs cannot be fairly apportioned:
Those courts presume that apportioning costs will be very difficult, and that the exception, requiring insurers to pay all of the defense costs if they are not capable of apportionment, thus applies more often than the rule requiring apportionment. Those courts implicitly require a greater degree of certainty in determining the allocability of costs than is either necessary or fair. We recognize that insurers, insureds, and courts will rarely be able to determine the allocation of defense costs with scientific certainty.

*84 However, the lack of scientific certainty does not justify imposing all of the costs on the insurer by default. The legal system frequently resolves issues involving considerable uncertainty. We presume the insurer and insured can negotiate a satisfactory settlement that fairly apportions the defense costs. When they are unable to agree, we likewise presume that our courts will be able to analyze the allegations in the complaint in light of the coverage of the policy to arrive at a fair division of costs.
[Id. at 215-16, 607 A.2d 1266 (citations omitted).]
Here, the trial judge found apportionment to be difficult and unworthy of more than a cursory effort. That response was consistent with some other jurisdictions, but, as we have observed, is an approach from which our Supreme Court parted company in SL Industries. While we appreciate the onerous nature of the endeavor, SL Industries requires that trial judges make the effort of apportioning fees by analyzing the proceedings and all relevant facts and circumstances related to both the covered and uncovered claims. Scientific precision is not required, only a fair and reasonable estimate. Because the trial judge failed to fully consider the issue, as required by SL Industries, we are compelled to reverse and remand for further proceedings.
While requiring apportionment in such circumstances, SL Industries does not indicate what factors should be considered in undertaking this difficult task. After carefully considering the parties' arguments, we conclude that the trial judge must at least weigh and consider the following.
First, the area of overlap must be understood. Allocation problems more commonly encountered are those where the insurer is requested to defend against multiple claims, only some of which are covered, or potentially covered, by the policy's terms. In those cases, the apportioning of fees can be particularly difficult. See Forty-Eight Insulations, supra, 633 F.2d at 1224. This case differs in that Healthcare was obligated to defend the entirety of the counterclaim and had no obligation to contribute to plaintiff's fees and expenses in prosecuting his complaint. Since there is a clear demarcation between the pleadings in this case, there is no need to parse the services of counsel among multiple theories of recovery. That is, it can be said with complete confidence that Healthcare was obligated to fully reimburse plaintiff for the services plaintiff's counsel rendered in defense of the counterclaim but Healthcare had no obligation to reimburse any fees incurred in the prosecution of the complaint.
Despite this clear distinguishing factor, however, both the complaint and the counterclaim share some common, or overlapping, factual features. For example, in seeking to prove his LAD claim, plaintiff was required to provide evidence that he was fulfilling the legitimate expectations of the hospital prior to his termination. See Clowes v. Terminix Intern., Inc., 109 N.J. 575, 597, 538 A.2d 794 (1988). That evidence was likewise relevant to the covered claims, since the hospital asserted in its counterclaim that plaintiff negligently performed his employment duties. This and other overlapping circumstances in the complaint and the counterclaim inevitably invited the parties to engage in the discovery of facts relevant to both pleadings, which are undoubtedly difficult to parse between the allegations of the complaint and the allegations of the counterclaim.
Healthcare argues that since plaintiff alone would have been obligated to pursue *85 these same avenues of discovery, if the counterclaim had never been asserted, it would result in a windfall to plaintiff to have Healthcare bear the entirety of such overlapping discovery. However, because plaintiff was entitled to a defense to the counterclaim, he was also entitled to the benefits of that defense in any way it would overlap those services which plaintiff's counsel would or did render on plaintiff's behalf in the prosecution of complaint. Stated another way, plaintiff was entitled to the full benefit of the duty to defend which Healthcare owed him, see Cont'l Cas. Co. v. Bd. of Educ., Charles County, 302 Md. 516, 489 A.2d 536, 545 (1985), and to limit the value of that benefit by reducing the amount which was actually expended in defending the counterclaim, because it overlapped the steps taken in prosecuting the complaint, would deprive plaintiff of that full benefit. Accordingly, plaintiff is entitled to be compensated for the reasonable amount of fees and expenses he incurred in defending the counterclaim. While plaintiff might have received a benefit if Healthcare had mounted and funded a defense to the counterclaim, as it should have, this does not mean that the parties should have to share those overlapping expenses and fees. By issuing its insurance policy, in exchange for a premium, Healthcare promised to provide such a defense and, by failing to do so, Healthcare should answer in damages to the full extent of what it was that it did not provide. As a result, in ascertaining the amount of fees to which plaintiff was entitled because of Healthcare's breach of its duty to defend, the trial judge should not reduce that amount because the same services were rendered, or benefited, plaintiff's claim against the hospital on his complaint. Instead, Healthcare may be held obligated for all those services rendered by plaintiff's counsel which were reasonably associated with the defense of the counterclaim. See SL Indus., supra, 128 N.J. at 215, 607 A.2d 1266 ("[T]he insurer [is obligated] to pay only those defense costs reasonably associated with claims covered under the policy."); Cont'l Cas., supra, 489 A.2d at 545 ("So long as an item of service or expense is reasonably related to defense of a covered claim, it may be apportioned wholly to the covered claim.").
For example, if plaintiff's counsel deposed a witness as to issues relevant to both the complaint and the counterclaim, and simply recorded the time spent at the deposition without explanationi.e., "attend deposition of Smith for 7 hours"the court must endeavor to estimate how much of that time was (a) solely of interest to the complaint, (b) solely of interest to the counterclaim, and (c) otherwise indistinguishable. In that example, Healthcare would be obligated to reimburse plaintiff for the time falling within the second category but not the first; Healthcare would also be obligated for the time falling within the third category to the extent it is reasonably related to the defense of the counterclaim.
We recognize, as the Supreme Court has acknowledged, that such calculations are difficult and not always amenable to scientific accuracy. See SL Indus., supra, 128 N.J. at 214-16, 607 A.2d 1266. Nevertheless, as the Supreme Court has said, a reasonable estimate may be made though the effort be considerable.
In large measure, Healthcare argues that the fees sought are in excess of what should have been incurred by plaintiff in seeking an expeditious resolution of the counterclaim. We find no merit in this contention. Healthcare was free to defend the counterclaim in what may have been a more economical or expeditious manner *86 than that pursued by plaintiff. Having chosen not to honor its obligation, Healthcare should not now be heard to complain that the counterclaim had no merit and would have been swiftly dismissed if a motion for summary judgment had been sooner filed. The strategic steps taken by plaintiff in defense of the counterclaim, after Healthcare's wrongful default, should not be second-guessed if, in hindsight, a more expedient path toward a favorable resolution on the merits was possible. So long as plaintiff took objectively reasonable steps in defending the counterclaim, Healthcare should be bound to compensate plaintiff for the fair and reasonable costs of those steps.
We also reject any contention that the insurer's right to allocation may have been lost due to the manner in which the issue arose. The allocation problem arose in this case not because an insurer, having honored its duty to defend, sought reimbursement from an insured for those fees incurred in defending uncovered claims, but by way of an insured's claim for reimbursement as a result of the insurer's breach of the duty to defend. In the former circumstance, the right of reimbursement exists because the insured would be unjustly enriched in benefiting by, without paying for, the defense of a non-covered claim. See Buss v. Superior Court, 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766, 776-78 (1997). In the latter circumstance, the insurer is obligated to pay damages for its breach of the insurance contract by failing to defend when it was obligated to do so. Crist v. Ins. Co. of N. Am., 529 F.Supp. 601, 605 (D.Utah 1982). SL Industries, discussed at length earlier in this opinion, which also arose from an insurer's refusal to defend a covered claim, demonstrates that allocation must be pursued even when the allocation difficulties were caused by the insurer's wrongful action.
Nevertheless, there are consequences for the insurer's refusal to honor its duty to defend. While a consideration of the burden of persuasion in such cases is a matter of first impression in this State, we conclude that the failure of the insurer to mount and fund a defense to the covered claim impacts upon the placing of the burden of persuasion. That is, in the present circumstances, if Healthcare had provided a defense to the counterclaim, pursuant to a reservation of rights, then it could have limited its damages, being bound only by professional standards, by engaging in those steps necessary only to its defense of the counterclaim. In that circumstance, it would have been able to avoid what it now believes to be excessive fees due to the overlap of the defense of the counterclaim with the prosecution of the complaint. Because Healthcare failed to defend, we conclude that the allocation of the burden of producing evidence and the burden of persuasion should be placed in the following way.
Because plaintiff, as the insured, conducted the defense of the counterclaim and, therefore, possesses the bulk of the information relevant to the claim for fees, he should be obligated to sustain the burden of producing evidence. We view this as a relatively slight burden. See Mogull v. CB Commercial Real Estate, 162 N.J. 449, 469, 744 A.2d 1186 (2000) (Such a burden is so light as to be "little more than a mechanical formality."). Plaintiff's case-in-chief need consist of little more than the production of documentary evidence relating to the legal fees and expenses sought,[2] and an explanation as to *87 their reasonableness and necessity, as well as such evidence purporting to justify the hourly rates charged. While this burden of providing evidence as to the reasonableness of the hourly rates charged and the time expended must be borne by the insured, the burden of persuading the trial judge, by a preponderance of the evidence, as to whether those fees can be allocated and, more importantly, how they should be allocated, should fall upon the insurer who allowed the difficulties of allocation to accrue through its refusal to defend. Cf., Crist, supra, 529 F.Supp. at 605. Placing the burden of persuasion on the insurer is a fair and just response to its wrongful failure to defend.
We also observe that the counterclaim was filed on March 2, 1998 and dismissed on November 2, 2001. Since the duty to defend arises only upon the assertion of a claim against the insured falling within the policy's coverage and ends once the claim has finally been resolved, Healthcare cannot be obligated to pay any fees or expenses occurring prior to March 2, 1998 or after November 2, 2001 in defense of the counterclaim, unless those fees and expenses relate to the efforts reasonably required by plaintiff in demonstrating that the claim was covered by Healthcare's policy and the quantum of fees to be reimbursed. Since the information provided by plaintiff in support of his claim for compensation includes information relating to services rendered by his counsel as early as June 1997 and as late as July 2002, the trial judge should carefully examine all relevant information to insure that plaintiff does not receive compensation for services which Healthcare clearly would not have been obligated to bear.
Ultimately, in securing a reasonable estimate of those fees which relate to the defense of the counterclaim, the trial judge should allow for the submission of such evidence as would shed light on the issues. Muralo Co., Inc. v. Employers Ins. of Wausau, 334 N.J.Super. 282, 295, 759 A.2d 348 (App.Div.2000). The judge may also utilize her own considerable experience. Indeed, a judge's years of legal experience, coupled with a full understanding of the case, provides an adequate starting point from which to consider the services rendered by counsel and how they should be apportioned. See Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 317 (2d Cir.1985); Travelers Ins. Co. v. Davis, 411 F.2d 244, 248 (5th Cir.1969).
In fulfilling this daunting task, the judge should not only allocate which services and expenses were incurred by plaintiff in defending the counterclaim, but also determine the reasonableness of the fees and expenses sought. Healthcare's failure to honor its duty to defend should not be viewed as an opportunity for plaintiff to have generated excessive fees in the anticipation of a windfall should Healthcare's disclaimer ultimately be viewed as wrongful, any more than Healthcare's liability should be limited to the most economical *88 fee possible. See Crist, supra, 529 F.Supp. at 605 (citing Ripepi v. American Ins. Cos., 349 F.2d 300 (3rd Cir.1965)). While we have already indicated that this does not mean the tasks undertaken by counsel may be second-guessed if they represented an objectively reasonable response to the counterclaim, we do not mean to suggest that the judge may not question the amount of time invested by plaintiff with regard to his counsel's services. Accordingly, in quantifying the amount of fees and expenses which were reasonably associated with plaintiff's defense of the counterclaim, the trial judge should ascertain the propriety of those fees and expenses by considering whether the hourly rates charged and the time expended were reasonable. See Scullion v. State Farm Ins. Co., 345 N.J.Super. 431, 437-38, 785 A.2d 469 (App.Div.2001).

IV
For these reasons, we affirm the judgment declaring that Healthcare both had and breached a duty to defend imposed by the policy in question, and we reverse and remand the award of damages for further proceedings in conformity with this opinion.
NOTES
[1] The billing records provided to the judge by plaintiff's counsel revealed that plaintiff had incurred $346,432.50 in legal fees in connection with all aspects of the case.
[2] This is not to say that the trial judge may not rightfully draw inferences from the sufficiency (or lack thereof) of the time records maintained by plaintiff's counsel. While, in this case, there was a significant factual overlap of the claims which plaintiff was prosecuting against the hospital and the claims which the hospital was prosecuting against plaintiff, counsel should have recognized, at the time Healthcare failed to respond to their requests for a defense, that the time might come when apportionment would be faced by the parties and the court. Because, as a general matter, it could be said that what Healthcare would not ultimately be obligated to pay would become the obligation of plaintiff himself, the trial judge may consider whether some attempt should have been made by plaintiff's counsel to identify those services which related only to the defense of the counterclaim, those which related only to the prosecution of the complaint, and those which overlapped.