**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1002-18T1

GARRITY, GRAHAM, MURPHY,
GAROFALO & FLINN, PC,

     Plaintiff,

v.

JERSEY CITY HEALTH CARE
PROVIDERS, LLC, d/b/a HARBOR
VIEW HEALTH CARE CENTER,

     Defendant/Third-Party
     Plaintiff-Appellant,

v.

MESA UNDERWRITERS
SPECIALITY INSURANCE
COMPANY, INC., a subsidiary
of SELECTIVE INSURANCE
GROUP, INC.,

     Third-Party Defendant-
     Respondent.

_____

Argued December 18, 2019 – Decided January 13, 2020

Before Judges Haas and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4057-16.

Ryan Milun argued the cause for appellant (The Killian Firm PC, attorneys; Ryan Milun and Eugene Killian, on the briefs).

Jerald J. Howarth argued the cause for respondent (Howarth & Associates LLC, attorneys; Jerald J. Howarth and Purnima D. Ramlakhan, on the brief).

PER CURIAM

Third-party plaintiff Jersey City Health Care Providers d/b/a Harbor View Health Care Center (JCHC) appeals from a September 28, 2018 order denying its motion for summary judgment and granting a motion for summary judgment filed on behalf of third-party defendant Mesa Underwriters Specialty Insurance Company, Inc. (Mesa). The motion judge concluded Mesa did not breach its duty to defend JCHC in a wrongful death action. We affirm.

The facts are largely undisputed. In 2013, JCHC was sued by an estate on behalf of a deceased family member who had been a resident at Harbor View Health Care Center.[1] JCHC tendered the lawsuit to its insurance carrier, Mesa. Mesa was required to defend JCHC in the underlying action and retained defense

---

[1] We refer to that lawsuit, entitled Estate of Mary Dwyer v. Harbor View Health Care Center, as the underlying action.

counsel on behalf of JCHC.[2]  On March 8, 2013, Mesa sent a reservation of rights letter to JCHC, stating that if the underlying action went to trial the coverage limits available under the insurance policy were capped at $1 million. Mesa's letter to JCHC also noted certain claims asserted in the underlying action would not be covered under the insurance policy, such as claims for violations of state and federal statutes or codes, punitive damages, and attorney's fees. Mesa suggested JCHC "consult with counsel of [its] choosing and at [its] expense to provide [it] with counsel in this matter."[3]

The underlying action went to trial and, on May 14, 2014, a jury rendered a $13 million verdict against JCHC.[4]

In June 2014, JCHC chose to retain its own counsel, Garrity, Graham, Murphy, Garofalo & Flinn, P.C. (Garrity Graham) to file various post-verdict motions.  JCHC hired Garrity Graham to "take control of the process," because JCHC "had no faith and confidence" in the attorneys assigned by Mesa, and it "wanted to be represented by what [it] considered the best attorneys that were

---

[2]  Mesa retained Neil Ptashnik and John Mueller to defend JCHC.

[3]  JCHC claimed this letter was never received because it was sent to an incorrect address.

[4]  In December 2014, the verdict was reduced by the trial judge to $4.75 million.

available." Mesa had no involvement in JCHC's decision to retain Garrity Graham. After the trial, Mesa assigned six different counsel who worked to overturn or reduce the verdict against JCHC.

Mesa's assigned attorney, Mueller, continued to work with Garrity Graham on post-trial matters, including motions for judgment notwithstanding the verdict, new trial, and remittitur. At some point, prior to the resolution of these motions, Garrity Graham was instructed to handle settlement negotiations with plaintiff's counsel in the underlying action. Mesa attorneys were included on discussions related to post-trial motion strategy and review of the draft motion papers.

In March 2015, another panel of this court reversed a significant judgment in favor of a plaintiff who died while in a nursing home. The case, Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24 (App. Div. 2015), clarified the law regarding the Nursing Home Responsibilities and Residents' Rights Act. Mueller informed JCHC's legal defense team about the Ptaszynski case, noting that matter was strikingly similar to the claims against JCHC in the underlying action.

Based on Ptaszynski, JCHC's legal team filed a motion for a new trial in the underlying action. JCHC's defense team, including the Mesa assigned

attorneys, received draft briefs in support of the new trial motion for review and comment. In May 2015, JCHC succeeded in obtaining a new trial on all issues. Based on the successful new trial motion, the underlying action settled with Mesa agreeing to pay the entire settlement amount despite the sum being more than its policy limit.

After the underlying action was settled, Garrity Graham filed suit against JCHC to recover $384,000 in outstanding legal fees for its post-trial work. JCHC then filed a third-party complaint, demanding Mesa pay Garrity Graham's outstanding legal fees.[5] In its third-party action, JCHC argued that between January and August 2015, Mesa's assigned attorneys abandoned their duty to defend, forcing JCHC to retain Garrity Graham. Mesa disclaimed any acts constituting abandonment of JCHC.

JCHC and Mesa moved for summary judgment. JCHC focused its motion on the significant number of hours of legal work performed post-trial by Garrity Graham as compared to the twenty-two hours of post-trial legal work devoted by Mesa's assigned attorneys during the same time period. JCHC also relied on a January 2015 email from Mueller to another Mesa assigned attorney, stating

---

[5] Garrity Graham settled its claim against JCHC.

Mueller would not perform further legal work until payment for any additional work was confirmed. JCHC claimed this email demonstrated Mesa's abandonment of its defense of JCHC.

Mesa argued JCHC chose to retain Garrity Graham to protect its financial interest, "recognizing [its] personal exposure in the case." According to Mesa, JCHC believed its interests were better protected through the legal services of Garrity Graham and JCHC lost confidence in Mesa's assigned counsel. At no time did Mesa attorneys refuse to work on behalf of JCHC post-verdict. Because Mesa never retained or instructed Garrity Graham to perform work for JCHC, Mesa argued it was not responsible for that firm's legal fees.

The motion judge found Mesa never abandoned its defense of JCHC. The judge concluded JCHC expressly engaged Garrity Graham to protect its interests during post-trial litigation. The judge remarked JCHC "knew about the uncovered claims" in the underlying action and "once the verdict came in [JCHC] did the prudent thing and [JCHC] hired personal counsel." The judge determined Mesa's insurance policy "requires that the carrier retain the counsel" and there was no evidence of any "authorization[] by Mesa to Garrity[] Graham to work on behalf of the covered claims." Further, the judge noted, "[n]o one ever withdrew. No one ever made a motion to be relieved. . . . I don't see

A-1002-18T1

anybody, carrier or retain[ed] defense counsel assigned by the carrier[,] as abandoning [JCHC]." Based on her findings, the judge granted Mesa's motion for summary judgment and denied JCHC's motion for the same relief.

On appeal, JCHC argues the motion judge erred in finding Mesa did not breach its duty to defend. Alternatively, JCHC contends Mesa should be responsible to pay Garrity Graham's legal fees incurred because Mesa's attorneys directed Garrity Graham to perform legal work.

Our review of a trial court's decision to grant or deny summary judgment is de novo, the same standard governing the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Summary judgment is to be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). To determine whether there is a genuine issue as to a material fact, the court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"An insurer's duty to defend an action brought against its insured depends upon a comparison between the allegations set forth in the complainant's pleading and the language of the insurance policy." Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010). Here, the parties agree the claims in the underlying action created a contractual duty on the part of Mesa to defend JCHC but disagree whether Mesa breached that duty during the time period from January to August 2015.

"When an insurer refuses to defend what is ultimately determined to be a covered claim, the insured is entitled to the damages proximately caused by that failure, namely, related counsel fees and expenses." Hebela v. Healthcare Ins. Co., 370 N.J. Super. 260, 274 (App. Div. 2004). JCHC does not, and cannot, demonstrate Mesa refused to defend JCHC in the underlying action. Nor did Mesa ever disclaim coverage related to the underlying action. Mesa's assigned counsel represented JCHC starting in 2013 and continued representing JCHC until the underlying action settled in 2016.

Since JCHC was unable to argue Mesa totally abandoned its duty to defend, JCHC argued Mesa "effectively abandoned" its obligation from January 2015 to August 2015. JCHC cited the January 2015 email that Mueller sent to another Mesa attorney, arguing the email evidenced Mesa's abandonment of its

defense of JCHC. However, JCHC retained Garrity Graham in June 2014. Thus, JCHC's claim it was forced to retain another firm because Mesa abandoned its duty to defend in January 2015 is inaccurate.

While Garrity Graham billed significantly more hours than the Mesa assigned attorneys between January and August 2015 and took the lead in preparing post-verdict motions, the law firm did so because JCHC preferred Garrity Graham, not because Mesa abandoned the defense of JCHC. Mesa's attorneys responded to all inquiries and performed all tasks as requested on behalf of JCHC.

JCHC never requested different counsel to be assigned by Mesa. JCHC retained its own counsel because JCHC "lack[ed] faith in the underlying attorneys assigned by Mesa." While there was nothing wrong with JCHC's decision to hire a law firm in which it had greater comfort and confidence, JCHC's preference did not constitute abandonment by Mesa. Under the circumstances, JCHC failed to demonstrate any genuine disputed facts to support its claim that Mesa breached or abandoned its duty to defend.

We also reject JCHC's argument that Mesa directed Garrity Graham to perform legal work. The emails upon which JCHC rely in support of this argument were directed to multiple attorneys, working as a team to obtain a new

9

trial for JCHC in the underlying action. Having reviewed the emails, there is nothing that could be construed as instructions by Mesa for Garrity Graham to perform legal work.

Based on the foregoing, the judge correctly concluded Mesa did not abandon its duty to defend JCHC and properly granted summary judgment in favor of Mesa.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1002-18T1