**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3443-19

JOMAIN, LLC, d/b/a THE
BRASS RAIL,

     Plaintiff-Respondent,

v.

THE CITY OF HOBOKEN,

     Defendant-Appellant,

and

UNDERGROUND UTILITIES
CORPORATION,

     Defendant-Respondent.

_____

Submitted March 2, 2021 – Decided June 29, 2021

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3380-18.

Antonelli Kantor, P.C., attorneys for appellant (Jarrid H. Kantor, Yulieika Tamayo, Jason A. Cherchia, and Lori D. Reynolds, on the briefs).

Law Offices of James H. Rohlfing, attorneys for respondent Underground Utilities Corporation (Lisa DeRogatis, on the brief).

PER CURIAM

The City of Hoboken (the City) appeals from three orders denying its motions for partial summary judgment regarding the obligation of co-defendant Underground Utilities Corporation (Underground) to defend plaintiff's claim against the City and one order granting Underground summary judgment and dismissing with prejudice all claims and cross-claims against Underground, including the City's cross-claim for contractual indemnification. Because Underground had a duty to defend based on its contract with the City, we reverse the orders denying the City's motions and remand.

In 2016, after a public bidding process, the City and Underground entered into a contract under which Underground would "perform construction services for the Washington Street Redesign Project," which included roadway improvements on Washington Street. The contract incorporated the City's bid document, which contained in all capital letters an indemnification provision requiring the successful bidder to:

> defend . . . , indemnify, and hold harmless the City . . . from and against any and all claims, liabilities, judgments, lawsuits, demands, . . . proceedings, suits, actions, [or] causes of action . . . of any kind and nature

2

whatsoever made upon or incurred by the City . . . whether directly or indirectly, (the "Claims"), that arise out of, result from, or relate to: (i) any of the work and services of the Provider as described in section 1 of this agreement, (ii) any representations and/or warranties by Provider under this agreement, and/or (iii) any act or omission under, in performance of, or in connection with this agreement by Provider . . . . Such defense, indemnity and hold harmless shall and does include claims alleged or found to have been caused in whole or in part by the negligence or gross negligence of any [City] person, or conduct by any [City] person or conduct by any [City] person that would give rise to strict liability of any kind. Provider shall promptly advise the City in writing of any claim or demand against any [City] person related to or arising out of Provider's activities under this agreement and shall see to the investigation and defense of such claim or demand at Provider's sole cost and expense.

The bid document also required the successful bidder to name the City as an "additional assured" in its liability insurance coverage.

On November 13, 2017, plaintiff, which operates a restaurant in Hoboken, filed a notice of tort claim asserting water damage to its property was caused by the negligence of the City "in its engagement and oversight of work performed by city employees and/or Underground . . . in performing street and pipe work in the vicinity" of its restaurant.

On August 27, 2018, plaintiff filed a complaint naming the City and Underground as defendants and asserting Underground had "performed street

and pipe work in the vicinity of" plaintiff's restaurant at the City's request and under its "direction and supervision" and had "negligently damaged and/or negligently disconnect[ed] sewer and/or water pipes, causing water to enter" plaintiff's restaurant and damage it. Plaintiff also alleged the City had "breached its duty of care [to plaintiff] by failing to properly monitor and supervise the Washington Street Redesign Project and the work of Underground," causing damage to plaintiff's property. All of the alleged negligence, even the City's, was based on Underground's work on the Washington Street Redesign Project.

In a November 19, 2018 letter to Underground's president, the City's attorney made a "formal demand for defense and indemnification of the City" in this case and asked for written confirmation that Underground would provide a defense. Both Underground and its insurer refused to provide a defense.

On December 20, 2018, the City filed an answer and cross-claims for contribution, indemnification, and contractual indemnification based on the indemnification clause in the bid document. On February 27, 2019, Underground filed an answer to the complaint. According to the City, on May 10, 2019, Underground filed its answer to the City's cross-claims and asserted cross-claims for contractual indemnification against the City.[1]

---

[1] We were not provided with a copy of that document.

In July 2019, the City moved for partial summary judgment. In its statement of undisputed facts in support of its motion, the City discussed the contractual-indemnification clause, the duties to defend and indemnify the clause imposed on Underground, and the demand for defense and indemnification the City had sent to Underground. Underground opposed the motion, arguing it was "premature, as no [j]udgment has yet accrued against any of the parties."

On August 29, 2019, after hearing oral argument and commenting on how the City's notice of motion referenced its "contractual indemnification cross-claims" and not specifically a duty to defend, the motion judge in an oral opinion denied the motion, finding it was "premature" on the issue of indemnification and declining to decide the duty-to-defend claim because the judge believed it had been only "obliquely referenced" in the moving papers.

In October 2019, the City moved for partial summary judgment expressly on Underground's duty to defend. Underground opposed the motion, arguing the City had failed to "prove the causative trigger," the City knew as of July 25, 2019, that Underground had not caused plaintiff's leak, and the indemnification clause was ambiguous. After oral argument on December 6, 2019, the motion judge denied the motion, holding the duty to defend was triggered based on

5

contractual language only if plaintiff's damages "ar[o]se out of, result[ed] from or relat[ed] to" Underground's work and could not be enforced because a genuine issue of fact existed as to whether a nexus existed between Underground's work and the damage to plaintiff's restaurant. The judge referenced documents obtained during discovery from the City's engineering-consulting firm indicating a water-main leak unrelated to Underground's work may have caused the damage.

In February 2020, the City moved again for partial summary judgment on Underground's duty to defend. Underground opposed the motion, arguing the City had not demonstrated the "causative trigger" of the duty to defend because the leak's cause was determined to be unrelated to Underground's work, which the City knew at the end of September 2017. Underground also moved for summary judgment, which plaintiff and the City opposed.

On March 27, 2020, after hearing oral argument, the motion judge denied the City's motion and granted Underground's motion, finding no genuine issue of fact existed indicating Underground could have caused the leak that damaged plaintiff's restaurant. Noting plaintiff did not have an expert on the issue of causation of the leak, the motion judge cited an investigation by a company retained by the City that had determined the leak had come "from a weight of

the existing concrete electrical conduit bank that was resting directly on top of the water main"; a daily work report of the City's engineering-consulting firm reaching the same conclusion and noting the leak was "coming out of an old repair clamp"; and the testimony of Underground's project manager who stated Underground's work was "installed in accordance with the contract documents." As to the City's cross-claim, the motion judge concluded the genuine issue of fact regarding Underground's liability he had found in his December 6, 2019 decision no longer existed because "nothing point[ed] to what [Underground had] done wrong" and any finding of liability by a trier of fact would be "a pure guess" based on "speculation." Accordingly, he found summary judgment in favor of the City on its cross-claim not "appropriate."

On appeal, the City argues the motion judge "erroneously conflated the duty to defend with the duty to indemnify"; the "clear and unambiguous language of the [c]ontract requires Underground to defend the City when a claim is asserted relating to the work completed as [p]art of the Washington Street Redesign Project"; and the duty to defend was triggered by the filing of the complaint in which plaintiff made allegations which, if true, established Underground's liability. The City also argues "public policy considerations" requires a finding that Underground had a duty to defend based on the language

of the complaint and contract and a duty to defend would have no value if it did not attach at the beginning of a case. In response, Underground asserts the City "has known since the outset that Underground's work had nothing to do with, and was wholly unrelated to, the water leak that caused [p]laintiff's damages" and argues the motion judge correctly interpreted the contractual provision at issue and, therefore, correctly decided the motions.

We review a trial court's summary-judgment ruling de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017); see also Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021). We consider whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of material fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided one party must prevail as a matter of law. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). A dispute of material fact is "genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c); see also Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). We

review a trial court's legal conclusions de novo. Clark v. Nenna, 465 N.J. Super. 505, 511 (App. Div. 2020).

A duty to defend "comes into being when the complaint states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J. Super. 68, 77 (App. Div. 1953), aff'd o.b., 15 N.J. 573 (1954). A duty to defend "is generally determined by a side-by-side comparison of the policy and the complaint, and is triggered when the comparison demonstrates that if the complaint's allegations were sustained, an insurer would be required to pay the judgment." Wear v. Selective Ins. Co., 455 N.J. Super. 440, 453 (App. Div. 2018); see also Hebela v. Healthcare Ins. Co., 370 N.J. Super. 260, 268 (App. Div. 2004) (finding "the obligation to defend is fixed when a complaint is filed . . . [because] the duty to defend is ascertained by comparing the allegations in the complaint with the language of the policy" providing the duty). "In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation's possible outcome, that governs the insurer's obligation." Flomerfelt v. Cardiello, 202 N.J. 432, 444 (2010). If the allegations in the complaint "correspond" to the "language of the policy," then "the insurer must defend the suit." SL Indus. v. Am. Motorists Ins. Co., 128 N.J. 188, 197 (1992). "A later determination that the claim against the insured is without merit . . . is

irrelevant." <u>Hebela</u>, 370 N.J. Super. at 268. Because it is based on the allegations and not proof of the allegations, the duty to defend is broader than the duty to indemnify. <u>See</u> <u>Polarome Int'l, Inc. v. Greenwich Ins. Co.</u>, 404 N.J. Super. 241, 272 (App. Div. 2008).

When the City first moved for partial summary judgment, the motion judge declined to make that required comparison because, in the judge's mistaken view, the City only "obliquely referenced" Underground's duty to defend in the moving papers. <u>Rule</u> 1:6-2 requires a moving party to submit a written "notice of motion" and to "state . . . the grounds upon which [the motion] is made and the nature of the relief sought." In the notice of motion, the City stated it was moving for partial summary judgment "as to contractual indemnification cross-claims asserted."[2] As defense counsel correctly pointed out to the motion judge, the duty to defend was part of the contractual-indemnification clause the City was seeking to enforce. The City specifically referenced Underground's duty to defend in its moving brief and in its statement of undisputed material facts. In that statement, the City bolded the duty-to-defend language contained in the parties' contractual-indemnification clause. In

---

[2] We were not provided with a copy of the notice of motion. We take that language from the motion judge's description.

 A-3443-19

its moving papers, the City clearly stated pursuant to <u>Rule</u> 1:6-2 the grounds on which it was making the motion and the nature of the relief sought – enforcement of the contractual-indemnification clause including the duty to defend contained in that clause. Instead of addressing the duty to defend issue substantively at the beginning of the case when it should and could have been addressed, the motion judge evaded the issue on inaccurate technical grounds and allowed it to linger. <u>See</u> <u>Eastampton Center, LLC v. Planning Bd. of Twp. of Eastampton</u>, 354 N.J. Super. 171, 187 (App. Div. 2002) (finding "a matter of substantial public interest should be resolved on the merits and not by a procedural default").

Had he then performed the required side-by-side comparison of the language of the complaint and the language of the contract, the motion judge would have seen that plaintiff's complaint contained allegations which, if sustained, would have required Underground to pay the judgment. Plaintiff's complaint falls squarely within the language of the contractual-indemnification provision. It is a "claim[]," "lawsuit[]," "demand[]," "suit[]," "action[]," and "cause[] of action" that "directly . . . arise[s] out of" or "relate[s] to: (i) any of the work and services of" Underground or "(iii) any act or omission under, in performance of, or in connection with this agreement by" Underground.

Plaintiff's complaint is based expressly and unambiguously on the work Underground performed in connection with the Washington Street Redesign Project, which was the subject of the contract between the City and Underground. Because plaintiff's complaint contained allegations which, if proven, would have required Underground to pay the judgment, Underground had a duty to defend those claims. See Wear, 455 N.J. Super. at 453.

Contrary to Underground's argument, and the motion judge's conclusion after the City's second motion, to establish a duty to defend the City was not required to "prove" any "causative trigger," prove plaintiff's damages resulted from Underground's work, or prove a "nexus" existed between Underground's work and the damage to plaintiff's restaurant. The City didn't have to prove anything; it was enough that plaintiff had alleged those things. The City simply had to demonstrate – which it did in its first motion for partial summary judgment – that the plaintiff's allegations fell within the language of the contractual-indemnification provision. As our Supreme Court held in Flomerfelt, "[t]he duty to defend . . . is not dependent upon whether there is a finding that the claim is covered; instead it attaches because . . . there are potentially covered claims." 202 N.J at 458. Because plaintiff's complaint

contained claims potentially covered by the contractual-indemnification clause, Underground had a duty to defend those claims.

Underground attempts to avoid our longstanding duty-to-defend caselaw by arguing those cases involved insurance companies and insurance policies. That is a distinction without a difference. Just as insurance companies are bound by the language of their contracts, i.e., their policies, so too is a party to a contract bound by the language of its contract. Here, Underground is bound by the language of the contract it had with the City, including the contractual-indemnification language which required Underground to defend the City in claims, lawsuits, or causes of action, like those set forth in plaintiff's complaint, arising out of or relating to the work Underground performed in the Washington Street Redesign Project.[3] Defense of such claims was a "risk" the City "insured against" and a risk Underground accepted when they entered into the contract. See Danek, 28 N.J. Super. at 77.

---

[3] Ironically, Underground cites an insurance case in attempting to support its interpretation of the contractual-indemnification language. See Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 35 (1998). That case addresses coverage and not a duty to defend, it does not address the meaning of "relate to," and even its discussion of "arising out of" supports our conclusion that plaintiff's causes of action arose out of Underground's work on the Washington Street Redesign Project.

We are mindful that a duty to defend attaches only to a covered claim. See Wear, 455 N.J. Super. at 456. Here, all of plaintiff's allegations in the complaint were premised on Underground's work on the Washington Street Redesign Project and all were covered claims. This is not a case in which "the underlying coverage question cannot be decided from the face of the complaint." Flomerfelt, 202 N.J. at 444; see also Wear, 455 N.J. Super. at 455-56. Even if it were, the duty to defend remains "until all potentially covered claims are resolved." Id. at 447; see also id. at 444 (finding in cases with "multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved").

The covered claims in this case were resolved when Underground prevailed on its motion for summary judgment and the motion judge found no genuine issue of fact regarding Underground's alleged negligence. That the motion judge ultimately found plaintiff's claims regarding Underground's alleged negligence to be without merit does not render meaningless the duty to defend that attached when plaintiff filed a complaint with claims clearly covered by the contractual-indemnification clause. See Polarome, 404 N.J. Super. at 273 (finding a duty to defend "remains . . . even if the claims are meritless,

fraudulent, or 'poorly developed and almost sure to fail'") (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 174 (1992)). A duty to defend is not determined through the prism of hindsight.

Because the motion judge erred in denying the City's motions for partial summary judgment on the issue of Underground's duty to defendant, we reverse those orders. We affirm the order granting Underground summary judgment. Because Underground refused to defend the covered claims set forth in plaintiff's complaint, the City is entitled to reimbursement for the counsel fees and expenses it incurred in its efforts to defend those claims. Hebela, 370 N.J. Super. at 274.[4] We remand for a determination of those fees.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] The City is entitled to reimbursement of "only those defense costs reasonably associated with [covered] claims." SL Indus., 128 N.J. at 214-15. The claims set forth in plaintiff's complaint are covered claims. We are unaware of any subsequent amendments or assertions by plaintiff of other claims. If the City made any effort to defend claims other than those asserted in the complaint, Underground would be entitled to a determination of whether those later-asserted claims were covered by the contractual-indemnification clause. See Grand Cove II Condo. Ass'n, Inc. v. Ginsberg, 291 N.J. Super. 58, 74 (App. Div. 1996) (finding a question existed as to whether later-raised claims in an amended pleading were covered claims).

A-3443-19